## JAMES v. UNITED STATES
### (two cases):
### Nos. 10484, 10485.

United States Court of Appeals
District of Columbia Circuit.

Argued March 22, 1951.

Decided June 28, 1951.

Henry Lincoln Johnson, Washington, D. C., with whom Curtis P. Mitchell, Washington, D. C., was on the brief, for appellant Stance James.

Curtis P. Mitchell, Washington, D. C., with whom Henry Lincoln Johnson, Washington, D. C., was on the brief, for appellant Oliver James.

Arthur J. McLaughlin and Richard M. Roberts, Asst. United States Attys., Washington, D. C., with whom George Morris Fay, United States Atty., and Joseph M.

Howard, Asst. United States Atty., Washington, D. C., were on the brief, for appellee.

Before WILBUR K. MILLER, PROCTOR and BAZELON, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

Stance W. James and Oliver W. James were convicted in the United States District Court for the District of Columbia under both counts of an indictment charging that on January 22, 1949, they entered the dwelling of Richard H. Beckley with intent to steal, and that they stole $60,000 in money and other items of property having an aggregate value of $1,900. They appeal.

Beckley testified that about midnight on the day of the crime he returned to his home and saw an automobile in the alley at the side of his house. As he approached the car the appellant, Stance W. James, came around it, threatened him with a gun, and ordered him to back up. Beckley obeyed. Then he went into his home and saw that his safe was gone, that the banister at the top of the stairway was broken, and that prints of the safe's wheels were on the stairs. The master switch in the house had been pulled and an electric clock had stopped at 11:20. His safe had contained $60,000 in currency, valuable jewelry and certain coins, including one five-dollar gold piece and two two-and-one-half-dollar gold pieces. On one of the latter he had scratched an X-mark six months before.

Stance was arrested February 20, 1949. He was driving a 1948 Cadillac which he admitted purchasing for $3,400. He was not employed at the time but explained his affluence by saying he had "hit the numbers." On the same day officers went to the home of the appellant, Oliver W. James, armed with a warrant for his arrest and another warrant authorizing the officers to search the premises for certain articles described therein, and to seize them if found. The arrest was made and the search was conducted. The officers found a billfold containing about $2,600 in large bills and another containing more than $1,900, mostly in $100 bills. Certain coins were found, including one five-dollar gold piece and two two-and-one-half-dollar gold pieces. When the coins were exhibited to Beckley immediately after the search he identified one of the gold pieces by an X-mark scratched on its surface. The search warrant did not describe coins as articles to be searched for and seized.

Charles E. James, a brother of the appellants, testified that about a week after news of the crime had been in the papers, Stance came to his place of business and asked him to dispose of some $1,000 bills which he had stolen from Beckley's safe. Charles said Stance told him some of the details of the housebreaking and larceny and informed him that he had put a gun on Beckley and backed him up.

There was proof that Stance and Oliver had bought the Cadillac shortly after the robbery and had paid for it with seven $500 bills which were handed to the seller by Oliver; and that on or about February 2 Oliver bought a motorcycle, using ten $100 bills to pay for it.

█ Among the several reasons for reversal advanced by the appellants, the first is that the search warrant was issued without probable cause. We think the affidavit upon which the warrant was based was sufficient to justify its issuance. But, were that not true, the appellants could not complain of the search and the subsequent seizure of incriminating articles; for, having taken Oliver into custody in his home under a warrant for his arrest, the officers had the right to search his premises and to seize any fruits of crime revealed thereby, regardless of whether the search warrant was validly issued. Harris v. United States, 1947, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399.

█ Next, appellants charge that the trial court erred in refusing to suppress for use as evidence certain coins seized at Oliver's home, because the coins were not described in the search warrant. We need not stop to consider the point because, during the search incident to the arrest, the officers lawfully seized the coins as fruits of crime, regardless of whether the

474

search warrant, standing alone, would have justified the seizure.

■ Another error asserted is the court's refusal to make available to appellants certain police "progress reports." The very term indicates the reports were memoranda of the progress of investigation and were not evidentiary in character. Nor did the court err in refusing to make available to appellants a personal memorandum made by one of the officers. He did not use the notation to refresh his memory, nor was it employed in any other manner so as to entitle appellants to examine it.

■ Also pressed upon us is the contention that the court's charge erroneously applied the presumption arising from recent possession of stolen property and sudden acquisition of wealth. We need not pass on the validity of the point as it was not preserved for use on appeal in the manner required by Rule 30, Federal Rules of Criminal Procedure, 18 U.S.C.A. Villaroman v. United States, 1950, 87 U:S:App. D.C. 240, 184 F.2d 261.

■ Emphasis is laid by the appellants upon their charge that the court erred in refusing to grant a new trial "where a juror testified that the was coerced and the verdict rendered, as a result, was not the one he expressed in th jury room." When the jury brought in its verdict, it found Stance W. James and Oliver W. James guilty, but found not guilty one Singleton, who had been indicted with them and was tried with them. Upon a poll of the jury, each juror indicated his concurrence in those verdicts. But, at the hearing on the motion for a new trial, one juror testified he had been told in the jury room he could not change his vote, as he had indicated he desired to do if the others were not willing to find Singleton guilty also. Nevertheless, he testified that he had voluntarily voted to find the two appellants guilty and that he had not been coerced, threatened or in any manner forced to do so. The trial judge was therefore correct in denying this ground for a new trial.

■ The appellants further complain that the court erred in refusing to permit them to play in the presence of the jury a wire recording of an alleged telephone conversation between the government witness, Charles E. James, and two defense witnesses, with the purpose of impeaching Charles. The recording was played in the hearing of Charles E. James but in the absence of the jury, after which Charles denied that it was his voice recorded on the wire. But even if it was his voice, the recording was obviously inadmissible and the court did not err in rejecting it, because Charles did not consent to the interception of the conversation and the use of the recording as evidence. 47 U.S.C.A. § 605 (1946); United States v. Polakoff, 2 Cir., 1940, 112 F.2d 888, 134 A.L.R. 607; United States v. Plisco, D.C. D.C. 1938, 22 F.Supp. 242.

We come to the last assignment of error. In it appellants say they were prejudiced by improper argument to the jury by the prosecuting attorney. The gist of this contention is that the prosecutor improperly suggested in argument that appellants' counsel had substituted an unmarked two-and-one-half-dollar gold piece for one of those stolen from Beckley, which he said he had marked some six months before and which he identified by the marking after it was seized in Oliver's home. At the trial neither of the two two-and-one-half-dollar gold pieces bore the distinguishing mark. The prosecuting attorney said to the jury:

"Now, the testimony from Mr. Ward for the Government was that from the time it [the coin] was over in police headquarters until it was producd here, the only evidence of anyone having handled it or seeing it since are the attorneys for the defendants Stance and Oliver James.

"Am I being unfair in saying that there was a switching of coins? Am I unfair in saying to you that the coin Mr. Ward saw on that morning, being the coin taken from him [sic]? If you have some doubt as to whether or not the coin that is here today is the same coin, am I being unfair in asking you to remember to the best

of your recollection, and may I argue this question, Am I being unfair to anyone? No. Because, I say to you, if the defendants and their attorneys, if they have as much interest as that, to bring these two boys, the Sneed boy and the Flanders boy, up in their office, along with the two defendants, and keep them there from 9:30 to 2 in the morning, then I say they are liable to do anything to deceive you in this case, in order to defeat justice."

No objection was made to these statements as they were advanced in argument, but later counsel for one of the appellants said this to the court:

"* * * in the course of his argument Mr. McLaughlin not only accused Mr. Johnson but accused me and this defendant Oliver James, and perhaps the United States marshal as well, that there was a switching of coins.

"Now, I ask your Honor to either tell the jury [sic], or that Mr. McLaughlin be reprimanded. I think it is reprehensible conduct."

to which the court responded, "You can reply to it in your argument."

█ The resentment of appellants' counsel at the implication that they may have been guilty of switching the coins is readily understandable, but we do not view the remarks of the prosecutor as prejudicial to the appellants' substantial rights. We observe that the quoted remarks were typical of unpleasantries exchanged by counsel for both sides in argument to the jury, and we have no doubt that the derogatory references which went both ways were discounted by the jurors as nothing more than sparks flying from the anvils upon which counsel were heavily hammering out their arguments.

On the whole, we think the appellants were fairly tried. The verdict of the jury must stand.

Affirmed.

BAZELON, Circuit Judge (concurring).

I agree that the convictions should be affirmed but I am unable to agree with the reasoning of my brethren in two respects.

First, the majority relies upon our decision in Villaroman v. United States, 1950, 87 U.S.App.D.C. 240, 184 F.2d 261, 262–263 to preclude consideration of appellants' contention that the court's charge to the jury erroneously applied the presumption arising from recent possession of stolen property and sudden acquisition of wealth. I do not think Villaroman requires such a conclusion. That case was decided on grounds which made it unnecessary to consider the effect of Rule 30 upon the other errors urged on appeal. I think the proper construction of the rule[1] is that suggested by Judge Fahy in his discussion of Villaroman in Montgomery v. Virginia Stage Lines, 89 U.S.App. D.C. ——, 191 F.2d 770.[2] He intimated there that if specific objections are made at the time the trial court refuses to grant a requested instruction, it is unnecessary to repeat those objections after the charge has been given and before the jury retires. I think such a reading of the rule is less formalistic than that suggested by way of dictum in Villaroman and yet satisfactorily serves the objective of the rule by calling errors to the trial judge's attention at a time when he may remedy them. Cf. Harlem Taxicab Ass'n v. Nemesh, 89 U.S. App.D.C. ——, 191 F.2d 459. Since appellant here did object after his requested instruction had been refused, I think we may consider his assignment of error.

Upon such consideration, I think the presumption referred to above was not erroneously applied. The charge, viewed in its entirety, properly confined the presumption to items which might be specifically identified upon the basis of evidence in the record. As to matter which could not be so identified, the rule in the charge was substantially correct.

[1] Rule 30 of the Federal Rules of Criminal Procedure, 18 U.S.C.A., reads in, pertinent part: "No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."

[2] Directly involved in that case was Civil Rule 51, 28 U.S.C.A., the relevant part of which is identical with Criminal Rule 30.

The second point on which I differ from the majority has to do with appellants' contention that they were prejudiced by the prosecuting attorney's argument to the jury, quoted at pages 3–4 of the majority opinion [191 F.2d 474]. I think the remarks complained of were improper and that their effect was not vitiated by the court's statement to appellants' counsel that he might reply to it in his argument. Nor can their effect upon the jury be minimized merely because they were made in the heat of argument. The jury should have been specifically admonished to ignore them. Although the court did not do that, it did say, during the argument and in the presence of the jury, in response to defense counsel's objection: "I don't think there is any evidence to show that you, Mr. Johnson, or anybody else tampered with the coin." (Transcript, p. 1318) That statement served substantially the same purpose as would have been served by a direct admonition to the jury. I think it sufficiently, though not ideally, cured an error which would otherwise have required reversal.