**J. A. HERZOG, Appellant,**

v.

**UNITED STATES of America,**
Appellee.

**No. 14611.**

United States Court of Appeals
Ninth Circuit.

Oct. 11, 1955.

---

Phillips, Avakian & Johnston, Spurgeon Avakian, J. Richard Johnston, Oakland, Cal., Frederick Bernays Wiener, Washington, D. C., for appellant.

Lloyd H. Burke, U. S. Atty., John Lockley, Richard H. Foster, Asst. U. S. Attys., San Francisco, Cal., for appellee.

Before MATHEWS and CHAMBERS, Circuit Judges, and BYRNE, District Judge.

BYRNE, District Judge.

Appellant J. A. Herzog operated a Pontiac agency dealing in both new and used cars. His principal business appears to have been the wholesaling of used cars to other used car dealers. Most of Herzog's car sales were handled through two employees, Douglass and Cline, who received the money from the sales and purportedly turned it over to Herzog or his office manager.

In March of 1954 Herzog was indicted on three counts charging wilful attempted income tax evasion.[1] He was found not guilty on counts one and two relating to 1947 taxes, and guilty on count three relating to 1948 taxes. On this appeal, appellant does not contend that the evidence in the record is insufficient to support the guilty verdict. What he does contend is that his rights were substantially prejudiced by (a) rulings excluding certain evidence offered by him, (b) failure to give certain requested instructions, and (c) denial of his request for examination of the grand jury testimony of certain witnesses.

One of the issues of fact in the case was whether side payments in excess of invoice prices were made to Herzog by the persons who purchased used cars from him. Appellant offered in evidence bi-monthly issues of the Kelley Blue Book, a trade journal that sets out estimated car prices, and a summary prepared by an accountant showing a comparison of the Blue Book price of each car, with the invoice price as shown on appellant's records and the total price (including side payments of cash) allegedly paid by the used car dealers. Appellant's asserted purpose in offering this evidence was to establish the market value of the cars and to impeach the testimony of the used car dealers by showing that the prices they claimed they paid for the cars were in excess of the market value.

There was evidence that during the period in question automobiles were scarce and that dealers paid whatever was necessary to obtain them. It is clear that the trial judge considered the Blue Books as untrustworthy in that they did not reflect the true market value and during a colloquy with counsel stated, "The evidence was that nobody paid much attention to the Blue Book during that period of time." However, even if it be said that the Blue Books did accurately reflect actual market values, they were properly excluded as they would not tend to prove or disprove any issue in the case. It is true that where market price is crucial, the state of the market may be proven by quotations or reports in trade journals. Wolcher v. United States, 9 Cir., 1952, 200 F.2d 493. Here market price is collateral to the main issue of whether or not Herzog's invoices correctly reflected the prices *paid*. Herzog and the car dealers did not disagree in any material way *as to the market value* of automobiles. Herzog said he *received* the prices listed on his books; the dealers testified that they had *paid* more than the amount listed on those books. Market value was not in issue.

Assuming that by some process of mental gymnastics it could be said

1. 26 U.S.C.A. § 145(b).

that the Blue Books established the actual prices paid by the car dealers to appellant, the exclusion of the evidence would not be prejudicial. The Blue Book prices, although lower than the prices claimed to have been paid by the car dealers, were higher than the prices listed on appellant's books. The most that could be said would be that appellant understated his income in a lesser amount than that charged in the indictment. The Government is not required to show the exact amount of income tax evasion and if a smaller amount than that charged in the indictment is shown, a defendant may nevertheless be found guilty. United States v. Schenck, 2 Cir., 1942, 126 F.2d 702.

Appellant argues that the Blue Book evidence tended to impeach the car dealer witnesses; that if they really paid as much as they claimed, they could not have expected to make any profit in view of the lower market value of the cars as shown by the Blue Books, and it just is not like car dealers to pay more than the market price for cars. This argument overlooks the fact that the Blue Book prices were higher than the prices the appellant testified he received. If there were any merit to the argument it would apply with equal force to the testimony of the appellant as it would appear to be just as unreasonable for a seller to accept less than market value as it would be for a buyer to pay more than market value.

 Neal McNeil, a used car customer of appellant during 1946 and 1947, testified to transactions occurring during that period, including a conversation with appellant in which appellant told him he was going to show only a portion of his selling price on the invoice and wished to collect the balance in cash. McNeil further testified that he conformed to this procedure in purchasing cars from appellant and paid him or his employees by check for the invoice price plus an additional amount in cash. On cross examination McNeil was asked if he had been involved in difficulties with the O. P. A. during the summer of 1946. He replied in the negative. Subsequently the appellant sought to introduce into evidence a certain journal entry appearing in McNeil's books reciting the disbursement of $2200.00 as "attorney fees etc. in connection with threatened O. P. A. suit * * *" This evidence was proffered for the purpose of impeachment and was excluded. The trial court's ruling was correct. McNeil's O. P. A. difficulties, if any, were not an issue in this case. The purpose of evidence is to prove or disprove some issue in the cause on trial. If proffered evidence does not tend to do either of these things, it has no place in the trial and is either immaterial or collateral to the inquiry. A witness cannot be impeached where the subject matter of his testimony is either immaterial or collateral to the issues in the cause in which the testimony is given. Arine v. United States, 9 Cir., 10 F.2d 778; Shanahan v. Southern Pacific Co., 9 Cir., 188 F.2d 564.

 The government produced evidence that 18 new "house" or "executive" cars were transferred into appellant's personal ownership and subsequently when resold the income was not recorded on the books of the agency nor reflected in appellant's tax returns. The appellant then offered evidence to show that there were 13 other "house" or "executive" automobiles registered in his name and when resold the sales were recorded on the books. This evidence was properly excluded as immaterial A defendant cannot establish his innocence of crime by showing that he did not commit similar crimes on other occasions. Cf. United States v. Dennis, 2 Cir., 183 F.2d 201, 232. For the same reason evidence was properly excluded which was offered for the purpose of showing that there were some sales as to which no evidence of side money had been presented.

 The appellant complains that the court erred in refusing to give requested instructions concerning bias or interest of witnesses. A trial court is not obliged to give an instruction in the

language requested but may use words of its own selection. Nye & Nissen v. United States, 9 Cir., 168 F.2d 846, affirmed 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919; Wright v. United States, 8 Cir., 175 F.2d 384; Petro v. United States, 6 Cir., 210 F.2d 49. The court instructed the jury that a witness is presumed to speak the truth; that this presumption may be rebutted * * * "by the manner in which he testifies * * * (by demeanor) * * * (by contradiction) * * * *by his relationship to the Government on the one hand and to the defense on the other hand.*" (Emphasis added). This was a clear and accurate instruction that the jury, in evaluating the testimony of witnesses, should consider possible bias or interest. The appellant's claim of prejudice is without merit.

During the course of the trial, counsel for appellant requested that a transcript of the grand jury testimony of witnesses Douglass and Cline be made available for counsel's inspection. The trial court denied appellant's request remarking, "You have to make some showing that it would be impeaching, otherwise it is a fishing expedition * * * *" Appellant assigns this ruling as error and cites as authority for his contention, Gordon v. United States, 344 U.S. 414, 73 S.Ct. 369, 97 L. Ed. 447; United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129; Shelton v. United States, 5 Cir., 205 F.2d 806; United States v. Cohen, 2 Cir., 145 F.2d 82; United States v. Krulewitch, 2 Cir., 145 F.2d 76, 156 A.L.R. 337; United States v. Alper, 2 Cir., 156 F.2d 222.

Other than the Alper case, the cases cited by appellant all deal with statements given by a witness to Government agents rather than testimony before a grand jury. None of the cases suggests that grand jury testimony or statements in Government reports should be turned over to the defendant to inspect for possible impeachment material without some prior showing that statements contradictory to the witness's testimony at trial

are contained therein. In the Gordon case the Supreme Court reversed a conviction because of the denial of a motion to inspect pretrial statements of Government witnesses. After noting that the holdings of their opinion were confined to the limited and definite category of documents dealt with in that case, the Court stated [344 U.S. 414, 73 S.Ct. 373]: "By proper cross-examination, defense counsel *laid a foundation* for his demand by showing that the documents were in existence, were in possession of the Government, were made by the Government's witness under examination, *were contradictory of his present testimony, and that the contradiction was as to relevant, important and material matters which directly bore on the main issue being tried: * * *.*" (Emphasis added.)

█ Surely there is at least as great a need for laying a foundation before invading the secrecy of grand jury proceedings, as would ordinarily be required before permitting the examination of statements and reports in the possession of the prosecutor. A trial court unquestionably has the power, under Rule 6(e) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., to order grand jury proceedings transcribed and produced for inspection by the defendant but such power should be exercised only where there is a clear showing that the ends of justice require it.

█ The Alper case does not deal directly with the question of inspection by the defendant of grand jury testimony; rather it concerns itself with inspection, preliminarily, by the trial judge. The purpose of the court's inspection is, of course, to determine whether in the court's discretion the testimony should be made available to the defendant. In the instant case the trial judge was not requested to inspect the grand jury testimony. Appellant's request was that the testimony be produced for the appellant's (not the trial judge's) inspection. We are not to be understood as saying that it would have

been error to refuse such a request had it been made. The exercise of the power to compel disclosure of matters occurring before the grand jury is within the court's discretion, and a preliminary examination looking to the exercise of that discretion should be undertaken by the judge only upon a proper showing. The Alper court enumerated certain criteria which should be taken into account before grand jury testimony is ordered transcribed and produced for the court's inspection. To the criteria there enumerated, we add another. The person requesting the inspection should be required to specify the particular statements he is seeking for impeachment purposes. It is one thing to ask a trial judge to inspect the transcript of grand jury proceedings to determine whether a witness there testified he spent the month of July in Alaska, or that he had a gun in his possession on a certain occasion, or that he rode a white horse in a parade. It is an entirely different matter to ask a trial judge to inspect the transcript and then make known to the parties whether in his opinion *any* statements of a witness before the grand jury contradict *any* statements the witness made during the course of the trial. Not only is the latter course a "fishing expedition", but the judge is chumming the fish for the fisherman. For the judge to act as associate counsel in this manner is contrary to every concept of proper judicial functions.

In the case at bar neither of the witnesses whose grand jury testimony the defendant sought to examine were questioned during cross-examination with respect to any contradictory statements they might have uttered before the grand jury, nor was it suggested to the court what contradictory statements the defendant hoped to find. There was no attempt to lay a foundation of any kind and the trial court did not err in denying the appellant's request.

During oral argument the appellant for the first time objected to the trial judge's charge to the jury on wilfulness. We are not required to determine whether there is any merit to this belatedly raised point since there was no objection made to the instruction prior to the time the jury retired. Rule 30 of the Federal Rules of Criminal Procedure provides in part: " * * * No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict * * *." But, argues the appellant in a supplemental brief following oral argument, this court's decision in Bloch v. United States, 9 Cir., 221 F.2d 786, rehearing denied 9 Cir., 223 F.2d 297, requires this division of the court to disregard Rule 30, and "This Court's decision in the Bloch case requires reversal here." Appellant points to the similarity of the disputed instructions in Bloch and this case; that in neither case was the disputed instruction objected to in the trial court; that the Bloch court disregarded Rule 30 and consequently this division of the court must do the same. Having been left with no alternative we disagree with the Bloch case. We agree with Brown v. United States, 9 Cir., 222 F.2d 293, 298, which was decided three days after and overrules *sub silentio* the Bloch case. In the Brown case the court refused to consider the objection because there had been no compliance with Rule 30 and stated, "It is not necessary to discuss the merit of the disputed instruction inasmuch as no objection to it was made by appellant prior to the time the jury retired."

Appellant's contention that he is entitled to have the disputed instruction considered on the merits if Bloch was so entitled in his case is not unreasonable and, by the same token, Brown would be entitled to have the merits of the disputed instruction considered in his case. The Brown case and the Bloch case cannot both be right. It is not a situation where each case presents a separate problem dependent upon the instructions considered as a whole, nor is it a question of whether the instruction is slightly tainted with error or seriously tainted. The

question is whether the court *reaches the merits* of the objection to *any instruction* where Rule 30 has not been complied with. We agree with Brown that absent an objection in the trial court, this court does not reach the merits of an objection to instructions.

There is a long line of Ninth Circuit cases in addition to Brown v. United States, supra, which specifically hold that appellate courts will not look to the merits of objections where Rule 30 has not been followed. It is true that the force of some of these decisions has been weakened where the court, after stating that the objection need not be considered on the merits, proceeded by way of dictum to indicate that even if it were considered on the merits it would be found that there was no prejudicial error. Despite the erosive weakening effect of this dictum, this circuit has almost without exception upheld Rule 30. See Mitchell v. United States, 9 Cir., 213 F.2d 951, 957; Bateman v. United States, 9 Cir., 212 F.2d 61, 70, "Under Rule 30 of the Federal Rules of Criminal Procedure, 18 U.S.C.A., failure to except to an instruction on the ground urged on appeal forecloses review of the question." ; Kobey v. United States, 9 Cir., 208 F.2d 583, 598; Benatar v. United States, 9 Cir., 209 F.2d 734, 743, "We are precluded by Rule 30 of the Federal Rules of Criminal Procedure, 18 U.S.C.A. from reaching the merits of the appellants' objection * * *."; Zamloch v. United States, 9 Cir., 193 F.2d 889, 892, " * * * under Rule 30 of the Rules of Criminal Procedure, 18 U.S.C.A. in order to have considered an assignment of error in the failure to give a

specific instruction a request that it be given must first be made to the Court."; Enriquez v. United States, 9 Cir., 188 F.2d 313, 316, "We may say that Rule 30 is not designed as a mere trap for the unwary. Painstaking compliance with its requirements, although not an easy matter for the lawyer, is of the very essence of the orderly administration of criminal justice."; Ziegler v. United States, 9 Cir., 174 F.2d 439, 448, "Appellant did not object to any portion of the charge or omission therefrom before the jury retired to consider its verdict. Hence we are not required to consider specifications 6-13."

There are decisions from other circuits which recognize that Rule 30 precludes appellate courts from considering objections to instructions made for the first time on appeal.[2] In other cases the court indicates (in most instances dictum) that it may disregard Rule 30 where there is "grave error which amounts to the denial of a fundamental right",[3] where there are "unusual circumstances present",[4] where error affects "substantial rights",[5] where the error is "plain and fundamental".[6] One court went so far as to say, "Although these rules (F.R.Crim.P.), so recently promulgated by the Supreme Court and having the effect of law, should be obeyed, we may in our discretion conclude not to apply them."[7] In the cases where the courts have indicated that they may disregard this rule if they so choose, they in most instances cite as authority for this power, Screws v. United States, 1944, 325 U.S. 91, 107, 65 S.Ct. 1031, 89 L.Ed. 1495, and United States v. Atkin-

2. Contreras v. United States, 5 Cir., 213 F.2d 96, 99; Finnegan v. United States, 8 Cir., 204 F.2d 105, 115, certiorari denied 346 U.S. 821, 74 S.Ct. 36, 98 L.Ed. 347; United States v. Furlong, 7 Cir., 194 F.2d 1, 3; James v. United States, 89 U.S.App.D.C. 201, 191 F.2d 472, at page 474; United States v. McCarthy, 2 Cir., 170 F.2d 267, 268; Thayer v. United States, 10 Cir., 168 F.2d 247, 249.

3. Fischer v. United States, 10 Cir., 212 F.2d 441, 444.

4. United States v. Marachowsky, 7 Cir., 201 F.2d 5.

5. Tatum v. United States, 88 U.S.App.D.C. 386, 190 F.2d 612, 614.

6. United States v. Bushwick Mills, 2 Cir., 165 F.2d 198, 201, 202.

7. United States v. Perplies, 7 Cir., 165 F.2d 874, 875.

son, 1936, 297 U.S. 157, 56 S.Ct. 391, 80 L.Ed. 555. The flaw is at once apparent when it is recognized that both of these cases were decided *before Rule 30* was promulgated by the Supreme Court pursuant to authority from Congress. To the extent that the Screws and the Atkinson cases conflict with Rule 30, they have not been the law since the Federal Rules of Criminal Procedure became effective March 21, 1946.[8] Rule 30 is clear and unambiguous and its application is not dependent upon the personal whims of the court. It provides that no portion of the charge to the jury or omission therefrom may be assigned as error unless objection is made before the jury retires. This rule which has the force of law leaves no area in which it may be disregarded. There is no distinction made for "grave error", "fundamental error", "slight error", "serious error" or any other kind of error. If there is a failure to except to an instruction the appellate courts are foreclosed from reviewing the question. Obviously if this court is precluded from reaching the merits of the objection, it does not reach the question of whether the error was "grave", "slight", "serious" or whether there was error at all.

 Some courts appear to find in Rule 52[9] the authority to disregard Rule 30. See Bloch v. United States, supra. It would indeed be an anomaly if the Supreme Court in adopting and promulgating both of these rules at the same time intended that one would nullify the other. An examination of these rules clearly reveals that there is no conflict between them. Rule 52 does four things: (1) defines "Harmless Error",

(2) provides that "Harmless Error" shall be disregarded by the courts, (3) defines "Plain Error", and (4) provides that "Plain Error" may be noticed although not brought to the attention of the court. The definitions make it clear that *all* error is either "Harmless" or "Plain" depending upon whether it affects substantial rights. It cannot be disputed that "Plain" error and prejudicial error mean the same thing, as prejudicial error is error which affects substantial rights. Cf. Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557. There is no mysterious third type of error which appellate courts may recognize under certain circumstances. If error is harmless it will not be considered whether called to the attention of the court or not; if it is plain or prejudicial error it *must* be considered if properly brought to the attention of the court and *may* be considered although not brought to the attention of the court.

 Those who seek to derive support from Rule 52(b) for the nullification of Rule 30, read into Rule 52(b) the words "by appellate courts" and "trial" so that the rule will read: "Plain errors or defects affecting substantial rights may be noticed *by appellate courts* although they were not brought to the attention of the *trial* court." That of course is not what the rule states. The words "the court" refer to the court which notices the error and the clear meaning of the sentence is that a court may notice plain or prejudicial error although not brought to the attention *of the court noticing the error.* In apply-

---

**8.** The Bloch case also relied upon Morris v. United States, 156 F.2d 525, 169 A.L.R. 305, a Ninth Circuit Case, the trial of which took place before the adoption of the Federal Rules of Criminal Procedure.

**9.** "Rule 52. Harmless Error and Plain Error

"(a) Harmless Error. Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.

"(b) Plain Error. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

ing the rule this court *may* notice plain or prejudicial error although not set forth as a specification of error relied upon as required by Rule 18, subd. 2(d) of the rules of this court. The manifest intent of the rule is to permit courts *sua sponte* to notice error which the parties through neglect or inadvertence failed to call to the court's attention,[10] but *it does not authorize the consideration of matters which another rule specifically states shall not be assigned as error.*

Every experienced member of the Bench and Bar knows that there are counselors who are very adept at sowing error in the record to provide an "ace in the hole" for reversal on appeal in the event of an adverse verdict of the jury. The trial judge does not have an opportunity to scrutinize proposed jury instructions at his leisure. Ordinarily the trial is delayed and the jury remains at recess while the judge settles the instructions with counsel after each party has submitted several dozen instructions. The attention of the court is engaged in the consideration of those instructions which are questioned by counsel with time for only a cursory examination of the instructions which are agreed upon by both parties. This would be a very fertile field for sowing error if a defendant were permitted to assign as error a charge in which he acquiesced. Rule 30 is designed to impede such tactics and its salutary purpose should not be frustrated by giving a twisted construction to a simultaneously promulgated rule.

Affirmed.

CHAMBERS, Circuit Judge.

I concur. Although I disagree with the decision in the Bloch case, I would be reluctant to go against it now were it not for my belief that Brown v. United States, 9 Cir., 222 F.2d 293, already has overruled Bloch sub silentio.

10. The revisor's note to the section states that Rule 52(b) is based upon Wiborg v. United States, 163 U.S. 632, 16 S.Ct. 1127, 1197, 41 L.Ed. 289, and former Rule 27 of the Supreme Court, 28 U.S.C.A. which provided that errors not specified would be disregarded, "save as the court, at its option, may notice a plain error not assigned or specified."