**UNITED STATES of America,**

v.

**Thomas McKEEVER and Lawrence M. Morrison, Defendants.**

United States District Court
S. D. New York.
Nov. 17, 1958.

Arthur H. Christy, U. S. Atty., for Southern District of New York, New York City, William S. Lynch, Asst. U. S. Atty., New York City, of counsel, for United States.

Stephen A. Fuschino, New York City, for defendant Thomas McKeever.

Henry A. Lowenberg, New York City, for defendant Lawrence M. Morrison.

HERLANDS, District Judge.

The two defendants, Thomas McKeever and Lawrence Morrison, now on trial, have been indicted under Title 18, U.S. C.A. § 1951, the Hobbs Anti-Racketeering Act. The charge is that the defendants conspired to commit extortion (Count 1) and that they actually committed forty-two acts of extortion (Counts 2–43).

The alleged victim named in the indictment is James J. Ball & Sons, Inc., a corporation that had a union contract with Local 205 of the International Longshoremen's Association. The defendants are agents of Local 205. Two of the principals of the Ball company are Jack Ball and George Ball.

After January 23, 1958, when the indictment was filed, the defendant McKeever, still functioning as a business agent of Local 205, continued to have fairly frequent contacts with the Balls; and he had a number of conversations with them. The imminent possibility that the Balls would be key prosecution witnesses was foreshadowed by the fact that the name of the Ball company was included in the indictment itself. At least two of the conversations between McKeever and the Balls—one with Jack Ball and one with George Ball—were tape-recorded by the defendant McKeever or by persons acting in his behalf.

The specific question now before the Court concerns the tape recording of an alleged conversation between George Ball (who is now on the stand) and the defendant McKeever, and the conditions governing the defendants' use of that recording for the purpose of impeaching George Ball, by showing a prior inconsistent statement. This question has arisen in the course of George Ball's cross-examination.

Because the problem posed is important not only to the trial of this particular case but also to the general administration of criminal justice, it is desirable to detail the facts and to consider somewhat comprehensively the controlling legal principles.

The bald recital of the facts—that prosecution witnesses, the named alleged victims in an extortion case, have been interviewed by the defendant himself after indictment and their conversations tape-recorded by the defendant for use on the trial—immediately suggests a prevision of the potential impact of that defense technique.

When first examined, the witness testified that he did not recall any particular conversation with the defendant McKeever in which there was a reference to the witness' testimony in this case. The defense was then permitted to have the witness listen, by means of earphones, to a playing of a tape-recording. This was done in open court in the jury's presence. The contents of the tape-recording were not permitted by the Court to be heard by the jury, because the recording was then being used solely to refresh the witness' recollection.

The Court also ruled that, for purposes of refreshing the witness' recollection, it was not incumbent upon the defense to establish the authenticity or accuracy of the tape recording. In so ruling, the Court simply recognized the rule that anything can be used to revive a witness' memory even, for example, a false statement. See Judge Learned Hand's analysis in United States v. Rappy, 2 Cir., 1947, 157 F.2d 964, certiorari denied 329 U.S. 806, 67 S.Ct. 501, 91 L.Ed. 688.

The witness next testified that his recollection was refreshed by the recording; and that he recalled "that conversation" with defendant McKeever. He then proceeded to state that his trial testimony concerning a certain luncheon discussion at the Meurot Club was the same as the statement on the same subject he had made to defendant McKeever during the conversation apparently tape-recorded.

The defendants now claim that there is an inconsistency between the witness' trial testimony about the Meurot Club discussion and the recorded statement of the witness on the same subject to the

defendant McKeever. The defendants seek to play part of the tape-recording before the jury in order to confront the witness with his alleged prior inconsistent statement, and thus to impeach his credibility.

The defendants take the position that they are not required to lay any further foundation for the proffered proof—the tape-recording of the alleged prior inconsistent statement—because the witness has testified that he "recalled that conversation." The defendants claim that they are not required to offer any proof (before the trial judge at a preliminary hearing or *voir dire* outside the jury's presence) as to how, when, where or by what mechanism the taped recording was made or as to the accuracy or completeness of the taped recording now produced in court.

In the *voir dire* thus far conducted by the court, the witness George Ball has testified that since November 1957 he had had fairly frequent contact with the defendant McKeever and that he had had a number of conversations with McKeever. In that *voir dire* examination, the witness, having listened to the taped recording, stated: (1) that he recognized the defendant McKeever's voice and also the witness' brother's voice in the background; (2) that he remembered speaking to the said defendant at a time when the defendant said some of the things that are recorded; (3) and that he remembered that the conversation took place right next to the witness' desk.

On the other hand, (1) the witness was unable to recognize his own voice on the recording; (2) he could not recall how the defendant McKeever was dressed on the occasion of the conversation or whether McKeever was alone or with someone else at the time or whether McKeever walked away from the desk at any time while talking or whether the witness remained at his desk throughout the conversation or whether McKeever was carrying anything at the time; and (3) he was not able to recall whether the recording contained the entire

conversation had with McKeever because he did not recall the entire conversation.

Defense counsel expressly declined to question the witness on the *voir dire*.

The prosecution argues that the facts summarized above show that the defendants have not established a foundation "for the accuracy or authenticity of the tape recording. There is no proof at this time before the Court that the tape recording produced by the defendants is a tape recording of any conversation had between McKeever and George Ball" (Government's Memorandum, p. 2).

For the reasons set forth in this opinion, the Court has concluded that, before the jury is permitted to hear any part of the recording, further evidence should be taken at a preliminary hearing outside the jury's presence in order to determine the admissibility of the recording.

Where the interdiction of the Federal Communications Act (47 U.S. C.A. § 605) with respect to wiretapping is not involved, sound recordings are admissible in evidence after a proper foundation of authenticity has been laid. See Annotation, 1958, 58 A.L.R.2d 1024, and Conrad, "Magnetic Recordings in the Courts," 40 Va.L.R. 32 (1954).

In Monroe v. United States, 1956, 98 U.S.App.D.C. 228, 234 F.2d 49, 54, certiorari denied 352 U.S. 873, 77 S.Ct. 94, 1 L.Ed.2d 76, rehearing denied 352 U.S. 937, 77 S.Ct. 219, 1 L.Ed.2d 170, motion for leave to file second petition for rehearing denied 355 U.S. 875, 78 S.Ct. 114, 2 L.Ed.2d 79, the Court unanimously held that recordings of conversations between defendants and a police officer were admissible in evidence, where the officer testified as to the accuracy and reliability of the recordings. After dismissing the defendants' objections that the recordings were inadmissible by reason of the best evidence rule, the Court said (234 F.2d at page 54):

"But courts have consistently admitted such recordings in evidence. (Citations omitted.) Their compe-

tency as evidence derives from their reliability as a means of arriving at the truth. Of course, there must be evidence introduced from which it can be inferred that the recordings are accurate. Lt. Thoman provided such evidence by testifying as to the operation of the recording device, his method of operating it, the accuracy of the recordings, and the identities of the persons speaking."

Although some parts of the recording conversations between the defendants and persons allegedly bribed were less audible than others, the court in United States v. Schanerman, 3 Cir., 1945, 150 F.2d 941, 944 held that they were properly played to the jury:

"(B)ut the mere fact that certain portions of the mechanically recorded conversations were less audible than others did not call for exclusion of what the jurors personally heard from the 'playing' of the records. There would be no more valid reason for exclusion of the mechanically recorded conversations than there would be for excluding competent conversations, overheard in part, by human witnesses" (at page 944).

■ Mechanically recorded conversations may be used not only as proof of admissions but also as evidence of prior inconsistent statements to impeach the credibility of a witness, provided a proper foundation has been laid. Calumet Broadcasting Corp. v. F. C. C. 1947, 82 U.S.App.D.C. 59, 160 F.2d 285, 288. The same rule has been followed in state courts. See Conrad, supra, 26, and 58 A.L.R.2d 1024, 1048. In Duke v. United States, 9 Cir., 1958, 255 F.2d 721, 728, certiorari denied 357 U.S. 920, 78 S.Ct. 1361, 2 L.Ed.2d 1365, the Court unanimously approved of the admission of a Government witness' recorded telephone conversation which would have the effect of allowing the jury to evaluate the credibility of the witness. The Court said (255 F.2d at page 728):

"The court admitted the record of a telephone conversation held dur-ing the progress of the trial between Duke and Buono, both defendants on one side, the government witness Hadzima, on the other. The recording was made by Duke (the defendant). The trial record is confused, but Duke is apparently now claiming that he was prevented from cross-examining Hadzima as to the conversation. * * The ruling of the court gave him everything to which he was entitled, since the jury had the whole record and were entitled to judge thereby the credibility of this witness."

But see James v. United States, 89 U.S.App.D.C. 201, 191 F.2d 472, 474, certiorari denied 342 U.S. 948, 72 S.Ct. 563, 96 L.Ed. 705.

■ A review of the authorities leads to the conclusion that, before a sound recording is admitted into evidence, a foundation must be established by showing the following facts:

(1) That the recording device was capable of taking the conversation now offered in evidence.

(2) That the operator of the device was competent to operate the device.

(3) That the recording is authentic and correct.

(4) That changes, additions or deletions have not been made in the recording.

(5) That the recording has been preserved in a manner that is shown to the court.

(6) That the speakers are identified.

(7) That the conversation elicited was made voluntarily and in good faith, without any kind of inducement.

See, in addition to the authorities already cited, Steve M. Solomon, Jr., Inc. v. Edgar, 1955, 92 Ga.App. 207, 88 S.E. 2d 167.

■ Judged by the foregoing criteria, the defendants in the case at bar have failed to establish an adequate foundation for the admissibility of the tape recording as evidence of a prior inconsistent statement by the witness, George

Ball. The brief and equivocal statement by the witness that he recalled "that conversation," when viewed in the light of the entire record, does not measure up to the minimal requirements of foundation proof.

■ At issue are the practicalities of forensic science as applied in judicial proceedings. The defendants are not. required to present a highly technical exposition of the mechanism or methods used.

■■■ The proper approach is that to which Circuit Judge Waterman adverted when he said: "* * * so that the party advancing the evidence need not lay an elaborate foundation of expert testimony in order for such evidence to be admitted." United States v. Sansone [1], 2 Cir., 1956, 231 F.2d 887, 890, certiorari denied 351 U.S. 987, 76 S.Ct. 1005, 100 L.Ed. 1500.

Current advances in the technology of electronics and sound recordings make inevitable their increased use to obtain and preserve evidence possessing genuine probative value. Courts should deal with this class of evidence in a manner that will make available to litigants the benefits of this scientific development. Safeguards against fraud.or other abuse are provided by judicial insistence that a proper foundation for such proof be laid.

Nothing said in the course of this opinion constitutes in the slightest a reflection upon the means and methods employed by the defendants in obtaining the recording. Nor does the Court intimate any opinion, adverse or otherwise, as to the authenticity and accuracy of the recording.

The Court will, therefore, hold a further preliminary hearing outside the jury's presence in order to afford the defense the opportunity to establish a foundation in accordance with the views expressed in this opinion.

1. In Sansone, the Court of Appeals unanimously held that a Government witness could testify as to a conversation he overheard by- means of a portable transmitter set. A proper foundation for the recounting of the conversation was laid when the witness testified that he saw the defendant and an informer conversing, that the witness tested the mechanism on the same day and found it operating, and that he recognized the defendant's voice.

It is true, as the prosecution contends in the case at bar, that Sansone, *inter alia*, stands for the proposition that a foundation must be laid "when evidence involving electronic devices is attempted to be introduced" (Government's Memorandum, p. 4). However, the Court described (231 F.2d at page 890) the test in the following words:

"When a portable transmitting-and-receiving set, or other device, *is used to overhear conversations*, the initial qualification for admission of evidence so obtained involves two sets of interrelated problems: First, whether the device used is an effective means of communicating sound, and second, the identification of the alleged speaker." (Emphasis supplied.)

That test is not completely appropriate here. In Sansone, the evidence introduced was a testimonial rendition of an overheard conversation. Therefore, a foundation need serve only to establish the witness' ability to hear and distinguish voices through the machine. The weight to be given to the testimony then turns on the credibility of the witness, with the opposition in a position to probe his testimony by cross-examination.

In the case at bar, however, the recording machine must be capable of picking up, as well as recording, sounds. Furthermore, in the present case, the reliability of the resulting recording must be established before the recording itself can be admitted. The "credibility," so to speak, of the recording itself, its accuracy and completeness, are left to the trial judge to determine as an initial or preliminary question of fact. The functional importance of foundation proof of accuracy and authenticity is highlighted by the obvious circumstance that the mechanical, physical recording cannot be cross-examined.