UNITED STATES of America, Plaintiff,

v.

Charles F. CORTESE, James David "Dave" Osticco, Charles F. Cortese, Samuel Lovecchio, Defendants.

Crim. A. Nos. 83–00136, 83–00149–01, 83–0014–02 and 83–00151.

United States District Court, M.D. Pennsylvania.

June 16, 1983.

See also D.C. 554 F.Supp. 1227.

---

Eric H. Holder, Jr., and Richard F. Green, U.S. Dept. of Justice, Public Integrity Section, Crim. Section, Washington, D.C., for plaintiff.

George E. Clark, Jr., Scranton, Pa., for Cortese.

Thomas Colas Carroll, John Rogers Carroll, Philadelphia, Pa., for Osticco.

Philip T. Medico, Jr., Anthony B. Panaway, Anthony J. Lupas, Jr., Wilkes-Barre, Pa., for Lovecchio.

MEMORANDUM

CALDWELL, District Judge.

The purpose of this memorandum is to address issues regarding the hearing scheduled for June 27, 1983, on several motions in the above-captioned criminal matters and to make certain rulings regarding the conduct of the hearing.[1] Defendant Charles F. Cortese has filed a motion for suppression and other relief and a motion for dismissal of the indictment in both cases brought against him. Defendant James David Osticco's omnibus pretrial motion seeks suppression of electronic surveillance, dismissal of the indictment, and severance of his trial from that of Cortese.

In the matters docketed at Criminal Number 82–00149–01 and 82–00149–02 co-defendants Osticco and Cortese were charged with violations of 18 U.S.C. §§ 371 (conspiracy to obstruct justice) and 1503 (obstruction of justice). Because these statutory provisions were discussed in our recent memorandum addressing defendant Osticco's bill of particulars and discovery motions, *see United States v. Osticco,* 563 F.Supp. 727 (M.D.Pa.1983), we will not repeat that discussion herein. In the case docketed at Criminal Number 82–00136 Cortese is charged with violating 18 U.S.C. § 1503 and with two counts of giving perjured grand jury testimony in violation of 18 U.S.C. § 1623. For a discussion of the false declarations statute, *see* our memorandum filed in *United States v. Lovecchio,* 561 F.Supp. 221 (M.D.Pa.1983).

The current suppression motions are directed at least in part to the admissibility of recorded conversations between Frank Parlopiano (or Parr), who appears to be the key government informant, and defendants. Another facet of the suppression issue concerns electronic surveillance through wire tapping and interception of oral communications at Medico Industries, Inc.

---

1. At the time of our order scheduling the hearing, only defendant Cortese had filed motions. On June 2 and 3, 1983, however, defendant Osticco filed his omnibus pretrial motion and supporting memorandum. Thus we have delayed in filing the present memorandum because we wished to address all motions that might be considered at the June 27, 1983 hearing.

■ Defendant Osticco's motion attacks the wiretap and oral communications interceptions on the several grounds delineated in 18 U.S.C. § 2518(10)(a)(i), (ii) and (iii).[2] Because the present memorandum is being issued prior to the date the government's brief is due on this motion, we have not had the benefit of considering both sides of the issue. We do, however, consider introduction of testimony in this matter important to the resolution of the suppression issue, and we, therefore, shall conduct the hearing so as to consider suppression with regard to all intercepted communications, consensual and non-consensual.

■ Both defendants have requested a hearing in accordance with *United States v. Starks,* 515 F.2d 112, 122 (3d Cir.1975), and the government concurs that such a hearing should be held. Defendants have also requested production of Parlopiano at the June 27 hearing so that the issue of his consent to participate in the taping of his conversations with defendants may be explored. Interception and disclosure of wire or oral communications are prohibited under 18 U.S.C. § 2511 subject to certain exceptions delineated in the statute. The following provisions of 18 U.S.C. § 2511(2) appear relevant in the present case:

> (c) It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire or oral communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception.

> (d) It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire or oral communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State or for the purpose of committing any other injurious act.

Defendants' position is that either Parr was not acting under color of law or, alternatively, that any consent he gave was obtained through intimidation and/or coercion by the government. The government's brief insists that circumstantial evidence may establish consent. We have reviewed the cases relied upon and conclude that although cases exist in which direct evidence from an informant has not been produced, the better course is to have the informant available. In fact, the government has recently indicated that it will produce Parlopiano at the hearing. Accordingly, we are directing that his appearance be for the limited purpose of testifying on the consent issue. It is to be expressly understood that questions addressed to Jencks Act (18 U.S.C. § 3500) materials or any other improper matters shall not be entertained and objections thereto shall be sustained.

■ Another procedural matter that must be clarified prior to the hearing is whether the hearing or any part thereof should be closed to the public. Defendant Cortese has requested a closed hearing and has relied upon the case of *Gannett v. DePasquale,* 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979). In *Gannett* the majority opinion made the following observation about pretrial suppression hearings:

> Publicity concerning pretrial suppression hearings ... poses special risks of unfairness. The whole purpose of such hearings is to screen out unreliable or illegally obtained evidence and insure that this evidence does not become known to the jury. Cf. *Jackson v. Denno,* 378 U.S. 368, 12 L.Ed.2d 908, 84 S.Ct. 1774, 28 Ohio Ops 2d 177, 1 ALR3d 1205. Publicity concerning the proceedings at a pretrial hearing, however, could influence public opinion against a defendant and inform potential jurors of inculpatory in-

---

**2.** Section 25.18 establishes procedures for nonconsensual interception of wire or oral communications, procedures that generally require authorization by a "judge of competent jurisdiction." It is undisputed in the present matter that two such orders were entered by Chief Judge Nealon for interceptions between December, 1979, and February, 1980.

formation wholly inadmissible at the actual trial.

The danger of publicity concerning pretrial suppression hearings is particularly acute, because it may be difficult to measure with any degree of certainty the effects of such publicity on the fairness of the trial. After the commencement of the trial itself, inadmissible prejudicial information about a defendant can be kept from a jury by a variety of means. [footnote omitted] When such information is publicized during a pretrial proceeding, however, it may never be altogether kept from potential jurors. Closure of pretrial proceedings is often one of the most effective methods that a trial judge can employ to attempt to insure that the fairness of a trial will not be jeopardized by the dissemination of such information throughout the community before the trial itself has even begun. Cf. *Rideau v. Louisiana,* 373 US 723, 10 L Ed 2d 663, 83 S Ct 1417. [footnote omitted]

*Id.* at 378–79, 99 S.Ct. at 2904–05, 61 L.Ed.2d at 620–21.

The *Gannett* case dealt with closure of a suppression hearing convened to consider whether confessions of defendants accused of murder were voluntary and to decide whether certain physical evidence was tainted because it was obtained as a result of the confessions. More relevant to the present facts is *United States v. Cianfrani,* 573 F.2d 835 (3d Cir.1978), a case decided a year earlier than *Gannett.*[3] The court in *Cianfrani* noted, and we agree, that Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510 *et seq.* and the legislative history thereof indicates that privacy rights must be given great protection and that disclosure of electronically intercepted communications must be scrupulously regulated. The problem in *Cianfrani* was the danger of prejudice posed by revealing such a communication prior to the issue of consent having been determined.

In the present matter, we believe that we can proceed properly with little or no need for closure. Much of the hearing to consider whether *Starks* criteria[4] have been met will not require playing any of the intercepted communications. In fact, we expect counsel for defendants to be able to stipulate to some of the *Starks* criteria and obviate the need for testimony on those points. Should defendants have particular tapes or sections of tapes that they wish to play or should the government anticipate playing any tapes or sections of tapes, the hearing at that point may be closed. The same consideration will apply to reading portions of transcripts of the intercepted communications. We feel that the course of our hearing will likely parallel the one in *Cianfrani,* however, in that little of the testimony is likely to relate directly to the contents of the intercepted communications but rather will focus on circumstances of the interception.

As the *Cianfrani* court noted, in finding overly restrictive the district court's closure of an entire hearing, "Only a small portion of the hearing concerned the contents of

---

**3.** Although the *Cianfrani* court found that the sixth amendment required a strong presumption of public access to pretrial proceedings, a position rejected by the *Gannett* majority, we find *Cianfrani* useful in delineating the proper way to proceed in an electronic surveillance case.

**4.** The *Starks* court adopted criteria set forth in *United States v. McKeever,* 169 F.Supp. 426, 430 (S.D.N.Y.1958), wherein the following factual foundation was required before sound recordings were deemed admissible:

(1) That the recording device was capable of taking the conversation now offered in evidence.

(2) That the operator of the device was competent to operate the device.

(3) That the recording is authentic and correct.

(4) That changes, additions or deletions have not been made in the recording.

(5) That the recording had been preserved in a manner that is shown to the court.

(6) That the speakers are identified.

(7) That the conversation elicited was made voluntarily and in good faith, without any kind of inducement.

the tapes themselves. The public could have been admitted to almost the entire proceeding without there having been any risk of disclosure of the contents of the communications." 573 F.2d at 857. Accordingly, in the present case, the request for closure is denied except with respect to any part of the hearing at which tapes of intercepted communications are played or transcripts thereof are read. Moreover, once the issues concerning the intercepted communications are resolved, if such resolution does not result in suppression, a transcript of any part of the hearing that was closed will be made available so that the press and public will have an opportunity to scrutinize matters from which they were excluded. We note that this practice was approved by both the *Cianfrani* and *Gannett* decisions.

 Another matter that will be considered at the June 27, 1983, hearing is whether the substantive charges against Charles Cortese must be dismissed. Cortese testified under a grant of immunity before a federal grand jury on March 7, 1980, and it was from that testimony that the false declarations charges stemmed. The law is clear that false testimony before a grand jury may become the predicate for perjury or false declarations charges. *See, e.g., Bryson v. United States,* 396 U.S. 64, 90 S.Ct. 355, 24 L.Ed.2d 264 (1969). It is undisputed that in October of 1982, another grand jury returned both indictments against Cortese. Defendant has argued that improper use was made of his immunized testimony and indicates that a hearing pursuant to *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972) is needed. We have read the briefs and studied the case law, but we feel that testimony would provide important guidance on this matter. Furthermore, we note that defendant Osticco's motion for severance largely depends on rulings we make regarding the immunized testimony of Cortese. Therefore, we feel it is incumbent on the government to show the manner in which the immunized testimony was presented to the indicting grand jury in October of 1982. To the extent that disclo-sure of grand jury proceedings is needed, we are permitting such disclosure pursuant to Federal Rule of Criminal Procedure 6(e)(3)(C).

This memorandum has addressed only issues that we regard as requiring a hearing or procedurally relevant to the conduct of the hearing. Other aspects of defendants' motions have not been discussed because we feel that a review of the briefs and applicable law will be sufficient. If defendants or the government wish to introduce testimony on other aspects of the outstanding motions, whether to permit such testimony shall be subject to our discretion. We do not propose to entertain lengthy argument from counsel since the hearing is for the purpose of taking testimony and extensive argument has already been embodied in the briefs. An appropriate order will be filed.

### ORDER

AND NOW, this 16th day of June, 1983, IT IS ORDERED that the hearing scheduled for June 27, 1983, shall be conducted as follows:

1. The hearing shall primarily be held for the purposes of taking testimony on suppression issues.

2. Frank Parlopiano (or Parr) shall be produced to testify on the limited issue of his consent to participate in intercepting communications for the government in these criminal cases.

3. The courtroom may be closed to the public and the press during the playing of tapes of intercepted communications or the reading of transcripts thereof.

4. In addressing issues of grand jury abuse, disclosure of proceedings before the indicting grand jury is permitted pursuant to Federal Rule of Civil Procedure 6(e)(3)(C).

5. Testimony related to other outstanding motions may be presented at the court's discretion.