**UNITED STATES of America**
v.
**Robert J. BRUZGO, Appellant,**
Nos. 16020, 16021.

United States Court of Appeals Third Circuit.

Argued Dec. 2, 1966.
Decided Feb. 10, 1967.

Charles Bidelspacher, Williamsport, Pa., for appellant.

John P. Burke, Department of Justice, Tax Division, Washington, D. C. (Mitchell Rogovin, Asst. Atty. Gen., Meyer Rothwacks, Richard B. Buhrman, Attys., Department of Justice, Washington, D. C., Bernard J. Brown, U. S. Atty., of counsel, on the brief), for appellee.

Before SMITH, FREEDMAN and SEITZ, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Circuit Judge.

The defendant-appellant was convicted by a jury of willfully attempting to evade payment of his personal income taxes for the years 1954–1957 inclusive in violation of Section 7201 of the Internal Revenue Code of 1954. He was sentenced and now appeals his conviction. Although he was jointly indicted along with his brother for certain other alleged violations, for reasons not now important those counts were dismissed before trial.

The first issue presented is whether the trial judge abused his discretion in refusing to grant defendant's motion to dismiss the indictments on the ground of asserted grand jury bias for which the "Federal Prosecutors" were allegedly responsible.

The defendant's motion to dismiss the indictments was filed seasonably but initially without any supporting affidavits or other supporting material.

As to the present issue the motion recites:

"2. The Indictments must be dismissed because they were procured by threatening a witness before this Grand Jury, Miss Florence Williams associated in business with Defendants, with loss of United States Citizenship, with five years imprisonment, with a $10,000.00 fine and by describing this witness in front of the Grand Jury as a 'thief' and a 'racketeer', all of which conduct by the then U. S. Attorney Daniel Jenkins and his Assistant William Morgan then before this Grand Jury on March 8, 9, and 10, 1961, was calculated to, and did, move this Grand Jury by passion and prejudice to the extreme that the Grand Jury was 'hissing' in the presence of the witness all contrary to the Defendants' Constitutional Right to Due Process

of Law and all contrary to the Defendants' right to a fair and unprejudiced investigation before the tribunal created by the Constitution of the United States and all contrary to our Jurisprudence as it has been guaranteed to us by, and ever since, the Magna Charta."

At the hearing on the motion the court expressed concern that defendant's counsel had not supported the grounds of his motion with an affidavit or other probative material. The court asked defendant's counsel if he was prepared to introduce affirmative testimony and he responded by saying that he would like to subpoena all the grand jurors. The court entered an order (January 31, 1962) which provided for the filing of affidavits with defendant's due first. Thereupon defendant filed a motion seeking the following: permission to take the affidavits of each grand juror; permission to read the transcript of all the grand jury proceedings connected with the case; and an extension of time to file affidavits. After further procedural skirmishing, the court entered an order on February 27, 1962 denying defendant's motion at least insofar as it sought to take affidavits from each grand juror and to see the grand jury records for March 8, 9, and 10, 1961. The order recites that such request "is premature and cannot be considered until there has been compliance with the court's direction as to the filing of affidavits to support the grounds given in the motion to dismiss the indictments".

Thereafter defendant filed the affidavit of Florence Williams which in material part is a duplication of the second ground of defendant's motion which is quoted above. The defendant also filed the transcript of a hearing held March 10, 1961 in which the government sought conviction on a contempt citation against Florence Williams because she invoked the Fifth Amendment in response to questioning by the grand jury. The court there found that the witness was not in contempt. The court at this time was not called upon to consider the effect on defendant of the prosecutors' conduct before the grand jury.

The government filed by way of reply an affidavit of William Morgan, an Assistant United States Attorney who presented the case to the grand jury. He stated that he attended the grand jury proceedings when Miss Williams was present and that the court reporter's transcript "is the complete transcript of the said Florence Williams' testimony before the grand jury in connection with the above captioned cases".

On April 27, 1962, the defendant renewed his motion to take the affidavits of the grand jurors and to inspect the grand jury records. A further hearing was held by the court and still later additional affidavits concerning an issue not raised on appeal were permitted to be filed on defendant's behalf.

Thereafter the court filed an opinion in which both defendant's motion to dismiss the indictment and his renewed motions were denied. The court stated in pertinent part:

"The testimony before the Grand Jury on March 9, 1961, was read by the court reporter and counsel for defendants furnished with a copy. The same counsel also represented Miss Williams at the March 10, 1961 hearing. The Court, at this hearing stated: 'She has no right to shield others through self-incrimination privilege, by asserting it. What she has a right to do, however, is to protect herself, and if she feels that it will tend to incriminate her of a Federal crime, she has a right—and this Court will protect her in asserting that right—not to testify.' She was allowed to return to the Grand Jury proceedings, did invoke the privilege and refused to testify. Whether the alleged remarks were or were not made to her is immaterial. She claimed her privilege and did not testify against the defendants. Certainly the defendants can find no basis for complaint in this situation. It was to their advantage that this witness furnished no information to the Grand Jury. The Grand Jury records covering this wit-

ness, for March 8, 9 and 10, 1961, have been examined by the Court in camera and I find nothing to justify any other conclusion."

Defendant quarrels with the trial judge's statement that it was "immaterial" whether or not the prosecutor's remarks were made. However, the opinion follows with the explanation that "she did not testify against the defendants". Thus, we can agree that the remarks were "immaterial" in the sense that they did not elicit testimony from Miss Williams unfavorable to defendant. But the fact that the trial judge properly employed the term "immaterial" in the context of his discussion does not end the matter. Defendant says the prosecutors' remarks, while directed toward Miss Williams, actually created a bias in the grand jury against him as an associate of hers. Defendant therefore argues that under the law he was entitled to have the indictment dismissed.

We note again that Miss Williams' affidavit is, for our purposes, a duplicate of the second ground of defendant's motion to dimiss the indictment. Both refer solely to the remarks of the prosecutors. In passing on the propriety of the trial judge's denial of defendant's motions, we shall take it as established in the present state of the record that the prosecutors made the remarks attributed to them in Miss Williams' affidavit. We do so particularly because no affidavit was filed by the government which denied defendant's charges with respect to the language used by the prosecutors before the grand jury.

We can commence our analysis by recognizing that the words we here take to have been uttered exceeded the bounds of proper conduct by prosecutors and that their use is to be condemned. The question remains, however, as to whether that conduct vitiated the defendant's indictment. We note that defendant does not allege or even suggest that the evidence before the grand jury was insufficient to support the indictment. Thus, we are not confronted with a situation where the votes of the grand jurors were necessarily based on their bias resulting from

the prosecutors' remarks addressed to Miss Williams. Moreover, Miss Williams was protected by the court in her refusal to testify. The threats did not produce any evidence from her. Indeed, the trial court instructed the grand jury on the importance of her right to rely on the privilege against self-incrimination. Finally, although defendant's brief recites that the prosecutors told the grand jury falsehoods about the defendant, there is no possible basis for this statement in the record.

■ Under these circumstances can it be said that the trial judge abused his discretion in refusing to grant defendant's motion to dismiss the indictment? We think not.

On this issue the case comes down to the point that the prosecutors improperly made threats or used abusive language toward a witness connected with defendant in his business and thereby influenced the grand jurors with such a bias toward the defendant that he was not afforded his constitutional right to be indicted by an "unbiased" grand jury.

Without considering the full sweep of the term "unbiased" we turn to an evaluation of the evidence on this question. The grand jurors knew of Miss Williams' business connection with defendant. They also knew that she successfully invoked the Fifth Amendment before them. They had evidence which it is not denied was sufficient to support an indictment. In these premises the threats could hardly have had independent material significance in the jurors' minds when they considered whether they wanted to indict defendant. Their "hissing" does not nullify their action in view of what they had properly before them. See United States v. Garsson, 291 F. 646 (D.C.N.Y.1923). We find the following language of the United States Supreme Court in Beck v. Washington, 369 U.S. 541, 555, 82 S.Ct. 955, 963, 8 L.Ed.2d 98 (1962) particularly appropriate:

"Petitioner [defendant] also contends that a witness before the grand jury was improperly interrogated in a man-

ner which prejudiced his case before that body. It appears that an employee of petitioner's union was called before the grand jury to testify in reference to activities within his employment. During his first appearance he made statements which he¹ subsequently changed on a voluntary reappearance before the grand jury some two days before the indictment was returned. On the second appearance the prosecutor attacked the witness' changed story as incredible and warned him that he was under oath, that he might be prosecuted for perjury, and that there was no occasion for him to go to jail for petitioner. The record indicates that the prosecutor became incensed over the witness' new story; and though some of his threats were out of bounds, it appears that they had no effect upon the witness whatsoever for he stuck to his story. We can find no irregularity of constitutional proportions, and we therefore reject this contention."

By the language of defendant's motion to dismiss and Miss Williams' supporting affidavit the defendant sought to prove only that certain remarks were made. Accepting for purposes of deciding this case that they were made, we have found that they did not invalidate the indictment. In our view, therefore, there was no prejudice arising from the trial judge's refusal to permit the defendant to read all the grand jury transcript or to permit the taking of affidavits of the grand jurors. By the same token, there is no need to give weight to or pass upon the legal propriety of the action of the trial judge in reading and evaluating the grand jury transcript in camera.

Defendant relies strongly on United States v. Wells, 163 F. 313 (D.C.Idaho, 1908). A reading of the facts of that extraordinary case shows that the prosecutor there had in substance almost coerced the grand jury into returning an indictment. On its facts it does not bear even a remote resemblance to the facts here. Insofar as it recognizes that there can be situations where the propriety of the action of a prosecutor may be so extreme as to require a court to vitiate an indictment on that ground, we have no occasion here to quarrel with the case. Compare United States v. Rintelen, 235 F. 787, 794–795 (D.C.N.Y.1916). Other important cases relied upon by defendant involved issues of "fair trial" before a petit jury, e. g., Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600, (1966); Estes v. State of Texas, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965). They are not of help in the context of this case.

We conclude that the conduct of the prosecutors before the grand jury did not under the present facts create a defect of constitutional or legal proportions. It follows that the grand jury proceedings were valid and that there was no error in denying defendant's motion to dismiss the indictment. The same is true of the denial of his motion to permit the filing of affidavits by the grand jurors and to inspect the minutes in their entirety.

We come next to defendant's claim that certain remarks made by the trial prosecutor in the jury's presence violated his constitutional rights. Defendant preserved his rights on this point in the trial court by requesting a mistrial. We should say that in his brief defendant's counsel attempts to "lump" this ground with the alleged errors in connection with the return of the indictment. We think the issue we have isolated must here stand or fall on its own merits, as it relates solely to the validity of the trial. What are the facts? One Carl Johnson was called as a witness by the government as a part of its case. He was a bank official who produced certain bank checks drawn on defendant's account. One of a group of them which had been endorsed by defendant was a payroll check payable to his brother. Defendant's counsel cross-examined Johnson with respect to this particular check and the following ensued:

"Q. Now, that check was payable to Bronne Bruzgo and is in this group of checks that the government has attempted to trace into Robert Bruzgo

because it is Exhibit 36, it is in that group?

"A. Yes.

"Q. Now, your bank handled that transaction; right?

"A. That's correct. The bank stamp is on the reverse of the check.

"Q. Now, on the face of that transaction, sir, is that not a gift, the checks to Robert, it is from Bronne?

"A. I can't answer that question.

"Mr. Strother [for Government]: Objection. It is clearly improper.

"The Court: Sustained.

"By Mr. Bidelspacher:

"Q. It is a payroll check and it is a payroll check to Bronne Bruzgo, Jr.?

"A. That's correct.

"Mr. Strother: If your Honor please, I submit this is all improper.

"The Court: That's argumentative. That is not cross-examination.

"Mr. Strother: If defense counsel wants that testimony when his case in chief comes up let him put his defendant on the stand and testify.

"Mr. Bidelspacher: I ask that be stricken. That remark of counsel is totally uncalled for and improper.

"The Court: This inquiry is improper.

"Mr. Bidelspacher: I am addressing my remarks now, your Honor, to the remarks that government counsel just made. I ask that they be stricken and that the jury be instructed to disregard it.

"The Court: What did he say?

"Mr. Bidelspacher: I would request that it not be repeated.

"Mr. Strother: I suggest, for the purpose of determining just exactly what that was, that when the case in chief of the defense comes up the defendant can take the stand and testify.

"The Court: Certainly, that's defense. Certainly. Go ahead.

"Mr. Bidelspacher: I ask that the remarks of counsel be stricken.

"The Court: Then you may read what he said.

(Discussion off the record.)

"Mr. Strother: I submit there is no question of law involved. I am not so sure of rights being violated.

"The Court: There is no requirement that the defendant take the stand, is there?

"Mr. Strother: I am not submitting that he has to.

"Mr. Bidelspacher: I ask for the withdrawal of a juror or that the remarks be stricken or for appropriate relief from the court right now.

"The Court: I will have to find out what they were. You don't want them repeated. You asked me not to have them repeated. Do you or don't you?

"Mr. Bidelspacher: I want the remarks stricken.

"The Court: I don't know what they were.

"Mr. Bidelspacher: It is in your hands.

"The Court: Then you will read the remarks, just what it is, what counsel said.

"Come up here."

(Discussion off the record at the bench.)

(Statement read at the bench)

(In open court:)

"The Court: Yes, the remarks of government counsel will be stricken and you will pay no attention to it.

(At the bench, outside the hearing of the jury:)

"Mr. Bidelspacher: Now, I ask— defense counsel at this point requests that since the remark was twice repeated by government counsel—defense counsel requests the withdrawal of a juror; just cautioning the jury to disregard it does not cure what counsel has said twice.

"The Court: I overrule the motion. I think I have taken care of it.

"Be a little careful. No more of that.

"Mr. Strother: I am sorry, your Honor. If I thought there was any impropriety in what I said, I would not have said it.

"The Court: It was uncalled for, it was extracurricular, and there was no point to it."

Defendant's objection of course was to the remark that "If defense counsel wants that testimony, when his case in chief comes up let him put his defendant on the stand and testify". He adds that the harm was aggravated by its repetition at the judge's request.

Defendant does not deny that the trial judge did everything he could to correct the situation by way of remarks to the prosecutor and to the jury at the time and later by his instructions. Defendant's basic contention is that the prejudice was so grave that it could not be remedied short of declaring a mistrial, particularly since he never testified.

█ It is clear that, ordinarily at least, it is not plain error if the court takes prompt and appropriate action to convey to the jury the impropriety of such remarks. United States v. Knox Coal Company, 347 F.2d 33, 44–46 (3rd Cir. 1965), cert. denied Lippi v. United States, 382 U.S. 904, 86 S.Ct. 239, 15 L.Ed. 2d 157. The sole question then is whether the quoted passage from the trial was so grave that it could be remedied only by discharging the jury.

█ We commence by noting that this testimony was part of the government's case and thus the jury had no way of then knowing whether the defendant would testify. Consequently, it is in stark contrast to cases where comment on failure to take the stand is made after defendant's case is closed or while the prosecutor is making his closing address to the jury. Next, the language of the prosecutor was not in its context a challenge to the defendant to take the stand. The prosecutor said that "if defense counsel

wants that testimony". Viewed in relation to the obviously improper nature of the cross-examination at the time, it was a slip by the prosecutor which is understandable in the ebb and flow of emotions in the course of a heated trial. Certainly, constitutional rights are to be protected whether violated accidentally or intentionally. However, trial activity which falls short of hindsight perfection does not always violate constitutional rights. We are satisfied that the prosecutors' remarks were not in their nature or content incurably prejudicial. Nor was there reversible error in view of the corrective action taken by the trial court.

The judgments of conviction were correct and will be affirmed.

FREEDMAN, Circuit Judge (concurring).

I would add two comments regarding the prosecutor's remark in the presence of the jury.

1. The remark of the prosecutor related to a defense which the defendant later abandoned, and unlike the situation presented in Griffin v. State of California, 380 U.S. 609, 85 S.Ct. 1229, 14 L. Ed.2d 106 (1965), no attempt was made to draw an inference of guilt from the defendant's failure to take the stand.

2. In joining in the opinion of the court, I think that in our supervisory role we should make clear our condemnation of the comment and the lack of any justification for it. Regardless of the provocation in the heat of the trial, there is no excuse for the violation by a government prosecutor of so fundamental a right as the right of a defendant not to take the stand in his own behalf.

Despite what I consider the inexcusable nature of the prosecutor's comment, I am not prepared to subscribe to the contention that in every case, under all circumstances and no matter how emphatically the error is corrected by the trial judge, a mistrial must necessarily be declared. See United States v. Knox Coal Co., 347 F.2d 33, 44 (3 Cir. 1965). I am satisfied that in the circumstances of the present case, which the opinion of the court has

fully pictured, and in view of the emphatic manner in which the trial judge dealt with the defendant's privilege in his charge to the jury, a new trial is not required.