**UNITED STATES of America**

v.

**Samuel LOVECCHIO.**

**Crim. No. 82–0151.**

United States District Court, M.D. Pennsylvania.

March 29, 1983.

Eric Holder, Jr., and Richard Green, U.S. Dept. of Justice, Washington, D.C., for plaintiff.

Philip T. Medico, Jr., West Pittston, Pa., Anthony B. Panaway, Anthony J. Lupas, Wilkes Barre, Pa., for defendant.

## MEMORANDUM

CALDWELL, District Judge.

### I. Introduction

Before us for disposition are the following motions filed on behalf of defendant: motion for a bill of particulars, motion for discovery and inspection, motion to inspect grand jury minutes, motion to dismiss indictment for prosecutorial misconduct, and motion to dismiss indictment (for other reasons). The government has filed timely opposing briefs and upon examination of the positions of the parties and the applicable law, we have concluded that these motions must be denied.

### II. Background

In an indictment filed on October 19, 1982, a grand jury charged defendant with two counts of perjury in violation of 18 U.S.C. § 1623, which provides in relevant part that an individual who, while under oath in a proceeding before a grand jury, "knowingly makes any false material declaration ... shall be fined not more than $10,000 or imprisoned not more than five years, or both." Specifically, defendant is charged with giving false testimony on two areas of inquiry when he appeared before a grand jury that was investigating alleged jury tampering in a federal criminal trial.

### III. The Bill of Particulars Motion

On November 29, 1982, defendant filed a motion for a bill of particulars pursuant to Federal Rule of Criminal Procedure 7(f). Rule 7(f) provides that "[t]he court may direct the filing of a bill of particulars." Language from *United States v. Addonizio,* 451 F.2d 49 (3d Cir.), *cert. denied,* 405 U.S. 936, 92 S.Ct. 949, 30 L.Ed.2d 812, *reh. denied,* 405 U.S. 1048, 92 S.Ct. 1309, 31 L.Ed.2d 591 (1972), a case referred to in the briefs of both parties, has provided useful insight into proper disposition of the present matter. In *Addonizio* the United States Court of Appeals for the Third Circuit upheld the propriety of the district court's denial of a bill of particulars motion and stated,

The 1966 amendment to Rule 7(f), Fed. R.Crim.P., eliminating the requirement that cause be shown before a bill of particulars may be ordered, is "designed to encourage a more liberal attitude by the courts towards bills of particulars without taking away the discretion which courts must have in dealing with such motions in individual cases." Notes of Advisory Committee on Rules, 18 U.S.C. Rule 7(f). The net result of the change seems to have been to increase the instances in which particulars are granted, thus contributing to a desirable decline in the "sporting theory" of criminal justice [footnote omitted]. *United States v. Jaskiewicz*, 278 F.Supp. 525 (E.D.Pa. 1968). This liberalization has, out of practical necessity, been limited in some important respects, however. It is still firmly established, for example, that a defendant is entitled neither to a wholesale discovery of the Government's evidence, *United States v. Birrell*, 263 F.Supp. 113, (S.D.N.Y.1967), nor to a list of the Government's prospective witnesses, *United States v. Jaskiewicz, supra*; *United States v. Palmisano*, 273 F.Supp. 750 (E.D.Pa.1967) [footnote omitted]. In the final analysis then, the granting of a bill of particulars remains a discretionary matter with the trial court, and it is still "obviously a matter of degree how far an accused must be advised in advance of the details of the evidence that will be produced against him, and no definite rules are possible." *United States v. Russo*, 260 F.2d 849, 850 (2nd Cir.1958). *The denial of a motion for a bill of particulars does not amount to an abuse of discretion unless the deprivation of the information sought leads to the defendant's inability to adequately prepare his case, to avoid surprise at trial, or to avoid the later risk of double jeopardy.* 451 F.2d at 64 (emphasis supplied). More recently, the court in *United States v. Oxford Royal Mushroom Products*, 487 F.Supp. 852 (E.D.Pa.1980) reiterated these principles, again disapproving the use of a bill of particulars as a "vehicle for discovery." *Id.* at 857.

In accordance with the foregoing, we have scrutinized the indictment in the present matter and have found no reason to grant defendant's motion. The indictment specifies that the perjured testimony before the grand jury occurred on or about June 18, 1982. Moreover, the questions asked and defendant's allegedly false responses thereto are quoted and the latter are underscored. *See* n. 5 *infra.* Defendant has, therefore, been fully apprised of the charges against him.

Furthermore, the government's brief indicates that defendant has been given access to a tape or tapes that contradict his grand jury testimony. Defendant should be able to prepare a defense to the perjury charges against him and we cannot perceive a possibility of surprise at trial or a future risk of double jeopardy arising from the current charges. The motion for a bill of particulars, therefore, is denied.

## IV. The Discovery and Inspection Motion

Defendant's motion for discovery and inspection contains thirty-four (34) numbered paragraphs requesting various information from the government. Our task in considering the motion has been simplified by the government's reference to materials which either have already been provided or will be provided without opposition.

Defendant's first request is simply an echo of the materials requested in the bill of particulars motion, which we have denied in its entirety. We are troubled that defendant has made this request in an effort to cover himself "if this Court should determine that said information should more appropriately be disclosed pursuant to a 'Motion for Discovery and Inspection.'" As the government correctly points out, bill of particulars motions and discovery motions generally seek different information and it is counsel's responsibility, rather than the court's, to properly categorize request(s). We will deny the request which incorporates the bill of particulars motion.

Turning now to the specified information sought in the other thirty-three paragraphs of the current motion, we note that the government indicates that it has already complied with the following five requests of the defendant: Numbers 4 (written or recorded statement(s) by defendant), 6 (recorded testimony of defendant before grand jury or any court), 8 (results or reports of physical or mental examinations or evaluations of defendant, including polygraph or other truth detecting tests), 15 (time, date, and place of any search or surveillance of defendant or any co-defendant or co-conspirator plus documents, logs, etc. generated in connection therewith), and 28 (any films, recordings, etc. of events specified in the indictment or any overt act not included in the indictment).

■ With regard to paragraph 9, which addresses written, recorded, and oral statements of defendant, as well as names and addresses of persons who were present during the statement(s) and/or who will testify at trial concerning the statement(s) the government contends that it has met its obligation under Federal Rule of Criminal Procedure 16(a)(1)(A). In answering the request for oral statements the government points out the limitation in the Rule that these be made by the defendant "in response to interrogation by any person *then known to the defendant to be a government agent.*" (emphasis supplied) The plain language of the Rule speaks for itself and courts have so construed it. *See, e.g., United States v. Navar,* 611 F.2d 1156 (5th Cir. 1980), wherein the court rejected defendant's post conviction argument that the government should have disclosed the oral statements she made to a drug agent before she was aware of his government affiliation. Accordingly, defendant in the present matter is restricted to the disclosures that comply with Rule 16(a)(1)(A).

Another category of requests encompasses matters on which the government indicates that it does not have any material or information. With regard to these eighteen requests, the government has expressed its willingness to disclose or its awareness of its obligation to disclose appropriate material should the government become aware of its existence. Since the government will provide defendant with the information sought, we find no need to give a detailed listing but rather will simply list the paragraph numbers of these requests, which are as follows: 5, 7, 10, 11, 13, 14, 16–19, 22, 23, 25, 27, and 31–34.

Several other requests may also be categorized as ones with which the government will cooperate. With regard to request 3, for example, the government has agreed to submit to the court for *in camera* inspection any material on which the government has questions regarding its exculpatory nature. Request 20 has been answered in the government's brief; the government has indicated that none of the witnesses it intends to call at trial has been granted immunity. Request 21, which seeks information on plea bargains or other benefits, including the Witness Protection Program (WPP) will be answered. The government has stated that one witness is in the WPP and that further information will be provided prior to trial.

■ A few requests will be denied for various reasons. For example, request 2 seeks rough notes, transcripts, and tapes, as well as stenographic notes of statements of defendant or "any other person." As the government's response points out, at least part of this request is governed by the Jencks Act, 18 U.S.C. § 3500, which provides basically that statements of government witnesses made to government agents need not be provided to defendant until such witness has testified on direct examination at trial. Moreover, a review of relevant case law shows that a request for such materials is wholly inappropriate when sought through a pretrial discovery motion. *See, e.g., United States v. Harris,* 458 F.2d 670 (5th Cir.), *cert. denied,* 409 U.S. 888, 93 S.Ct. 195, 34 L.Ed.2d 145 (1972). The government has indicated its willingness to disclose appropriate materials if acquired and in fact has already provided some materials relevant to defendant. Any overlap of this request with the motion to inspect

grand jury minutes (addressed *infra*) or any other requests in the current motion regarding grand jury materials are incorporated into our discussion thereof and need not be repeated here.

■ In request 12, defendant seeks detailed information on all witnesses that the government intends to call at trial. Included in this request is grand jury testimony or a summary thereof. The authority cited falls far short of showing defendant's entitlement to such information. For example, the court in *United States v. Chaplinski*, 579 F.2d 373, 375 (5th Cir.1978) stated, "It is clear law that '[a] part from the Congressionally created exception in capital cases, the granting of a defense request for a list of adverse witnesses is a matter of judicial discretion ...'. *United States v. Hancock*, 5 Cir., 1971, 441 F.2d 1285, 1286; *United States v. Moseley*, 5 Cir., 1971, 450 F.2d 506, 510." We also note our agreement with the government that request 24 is essentially seeking the names and addresses of government witnesses, and we will deny it.

■ Request 26 expansively asks for "[a]ll vital incriminating information which the Government intends to offer into evidence at trial against the Defendant." In support, defendant has cited *United States v. King*, 461 F.2d 53 (8th Cir.1972), wherein among the reasons for reversal of a conviction, was the government's last minute disclosure of chemical tests which the court had ordered be provided to defendant. The result in *King* was that defense counsel had no opportunity to counter these test results. *See id.* at 57–58 n. 5. However, though the *King* court referred to "vital incriminating information," we do not interpret the language to mean that defendant, by simply framing a request for information in that manner, has access to the entire government file.

In actuality, *King* seems to be in line with the provisions of Federal Rule of Criminal Procedure 16(a)(1)(D), which in relevant part requires the government to comply with a request of defendant to inspect and copy the results or reports of scientific tests, whether exculpatory or non-exculpatory. The rationale we follow here is well-stated in *United States v. Boffa*, 513 F.Supp. 444, 485 (D.Del.1980), where, in a bill of particulars context and citing *Addonizio, supra*, the court observed that "there is no requirement that the Government weave all the information at its command into a warp of fully integrated trial theory for the benefit of the defendants."

Request 29 seeks information regarding grants of immunity to grand jury witnesses regardless of whether they will be called by the government to testify at trial. Defendant's reliance on *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), appears misplaced since that case forbids "the suppression by the prosecution of evidence favorable to an accused upon request ... where the evidence is material either to guilt or punishment." *Id.* at 87, 83 S.Ct. at 1196, 10 L.Ed.2d at 218.

■ The other case cited by defendant is *United States v. Brighton Bldg. & Maintenance Co.*, 435 F.Supp. 222, 233 (N.D.Ill. 1977), wherein a defendant had sought discovery of "any grants of immunity or promises of leniency given by the Government to any party or witness." The court noted that there already was compliance with the obligations set forth in *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972)[1] but directed that the government "should provide ... a *list* of all witnesses granted immunity ... before the grand jury." 435 F.Supp. at 233 [emphasis in original]. From the wording in *Brighton* it is difficult to discern whether the court meant to restrict the list to trial witnesses who were granted immunity before the grand jury or to include everyone who testified before the grand jury under a grant of immunity, whether called at trial or not. We believe the better reasoned interpreta-

---

1. In *Giglio*, a unanimous Supreme Court reversed a conviction when the government failed to disclose that a witness had been promised he would not be prosecuted if he testified for the government before a grand jury and at trial.

tion is the former. The government has indicated that none of its trial witnesses testified before the grand jury under a grant of immunity. We feel that the government has sufficiently responded and we will deny defendant's request for immunity information on grand jury witnesses that the government will not call to testify at trial.

■ The final matter we must address in defendant's discovery and inspection motion is request 30, which seeks copies of court orders that impanelled or extended the term of the grand jury plus a list of the grand jurors and their attendance records. The motion cites no authority for this request nor is the request specifically addressed in defendant's brief. We have determined that this request should be denied and turn now to defendant's motions to inspect the grand jury minutes and to dismiss for prosecutorial misconduct.

## V. The Grand Jury Motions

■ Defendant has filed two related motions directed to proceedings before the grand jury. Defendant's motion to inspect the grand jury minutes is made pursuant to Federal Rule of Criminal Procedure 6(e), which permits the court to direct disclosure of the otherwise secret proceedings of a grand jury. Specifically subdivision (e)(3)(C)(ii) provides that disclosure may be made "by a court at the request of the defendant, upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury." Although the Rule embodies a means through which disclosure may occur, courts have clearly indicated that the Rule "was not designed as an authorization for pretrial discovery ... [but

rather] to protect the secrecy of Grand Jury proceedings by restricting disclosure to the exceptional case where a particularized need is shown." *United States v. Weinstein,* 511 F.2d 622, 627 (2d Cir.), *cert. denied,* 422 U.S. 1042, 95 S.Ct. 2655, 45 L.Ed.2d 693 (1975); *United States v. Shober,* 489 F.Supp. 393, 410 (E.D.Pa.1979).

In the present situation defendant's inspection motion seeks disclosure of the minutes of all grand jury sessions during which matters leading to the indictment against defendant were considered. He also wishes to inspect and copy the original tape recordings and handwritten notes of the court reporter at the grand jury proceedings. In support of his request, defendant asserts a belief that hearsay evidence, as well as evidence illegally obtained by use of a body wire and wiretap, was submitted to the grand jury. Moreover, defendant alleges that "deliberate and calculated leaks" by the government to the press corrupted the impartiality of the grand jury. With respect to this contention, defendant has filed a separate motion to dismiss the indictment for prosecutorial misconduct. Since both the inspection and dismissal motions require us to consider allegations of improper publicity, we will deal with this issue first, after which we will address the remainder of the prosecutorial misconduct motion, as well as defendant's hearsay and illegally obtained evidence arguments.

The publicity with which defendant is concerned consists of eight (8) articles that appear to have been published in newspapers in the Scranton, Pennsylvania, area. Although some articles are undated, we will give defendant the benefit of the doubt and assume that publication occurred at or about the time the grand jury met.[2] We

---

2. Defendant has attached copies of the articles to his motion. To expedite our discussion, the following list provides pertinent available information:

| Title of Article | Date and Place of Publication |
|---|---|
| 1. U.S. Attorney Hits "Leaks" | 2/25/82 Citizen's Voice (Scranton) |
| 2. Federal Panel Probes Jury Tampering | 4/12/82 Citizen's Voice (Scranton) |
| 3. Probe into Jury Tampering is Reportedly Intensifying | Date and Place unknown |
| 4. Mancuso Ordered To Testify with Immunity Guarantee | Scranton Times (Date unknown) |

have examined each of the articles and observe initially that defendant Lovecchio's name appears in only three of them (Articles 5, 6, and 7). None of these three articles is dated, but the government has attached to its brief a transcript of defendant's testimony, which indicates that Lovecchio appeared before the grand jury for questioning on June 18, 1982.

Examination of the articles that mention defendant by name indicates that Lovecchio was subpoenaed as a witness before the grand jury after he initially appeared but did not testify. The article entitled "Court Ponders Balky Witness" is largely speculative and states that "it is believed" a closed hearing before a federal district judge was held because defendant refused to testify and that federal attorneys "are believed" to have offered defendant immunity in exchange for his testimony. The article also states that government reasons for seeking Lovecchio's testimony "are not known." A review of defendant's grand jury testimony shows that anything the grand jurors might have read in these speculative and undetailed published accounts conformed to the more extensive information given to the grand jury regarding the grant of immunity under which defendant testified. Specifically the grand jury and defendant were informed that the immunity would not insulate defendant from a subsequent prosecution for perjury, that defendant was neither a target nor a subject of the investigation, and that by court order defendant could not invoke the fifth amendment and refuse to testify.

In the present case defendant has failed to link the generation of the publicity to government sources. Article 1, *see* n. 2 *supra,* contains observations by the United States Attorney that "[s]omeone privy to

these investigations has seen fit to attempt to conduct a trial via the news media." This general statement, however, was published almost four months prior to defendant's appearance before the grand jury and is all defendant has presented regarding the source of media information. Moreover, two articles refute suggestions of government-induced leaks. One ("Mancuso Ordered to Testify With Immunity Guarantee") indicated that the government attorney handling the case declined to give reasons why several individuals and certain documents had been subpoenaed. The other ("Probe into Jury Tampering is Reportedly Intensifying") expressly stated, "Officials connected with the case refuse to comment."

██ Though Federal Rule of Criminal Procedure 6(e)(2) states the general secrecy rule regarding proceedings before a grand jury, its nondisclosure provisions encompass only grand jurors, interpreters, stenographers, operators of recording devices, typists who transcribe testimony, and government attorneys. Individuals called as witnesses may disclose whatever they wish to the media. Another important consideration in the present matter is that none of the articles relates to the charges against defendant. Defendant was granted immunity with regard to the jury tampering investigation, and he has pointed to no publicity that is relevant to the perjury indictment returned against him.

██ As we have indicated we can discern nothing prejudicial in the publicity cited by defendant. Furthermore, our review of applicable authority convinces us that the extreme sanction of dismissal of an indictment is rarely used and would certainly be inappropriate in a situation such as the one now before us. *See, e.g., United*

| Title of Article | Date and Place of Publication |
|---|---|
| 5. Court Ponders Balky Witness | Scranton Times (Date unknown) |
| 6. Medico Figure Refuses to Testify | Date and Place unknown |
| 7. Witness Given Order To Testify for Grand Jury | Scranton Times (Date unknown) |
| 8. Indictments Expected in Jury-Tampering Investigation | 6/2/82 Scranton Times |

*States v. Brien,* 617 F.2d 299, 313 (1st Cir.) *cert. denied,* 446 U.S. 919, 100 S.Ct. 1854, 64 L.Ed.2d 273 (1980); *In Re Grand Jury Proceedings,* 632 F.2d 1033, 1039 (3d Cir.1980). The most lucid formulation of the standard applicable to the current matter was that enunciated by the court in *Silverthorne v. United States,* 400 F.2d 627, 634 (9th Cir. 1968), *cert. denied,* 400 U.S. 1022, 91 S.Ct. 585, 27 L.Ed.2d 633 (1971):

> The quantum of evidence necessary to indict is not as great as that necessary to convict. If a grand jury is prejudiced by outside sources when in fact there is insufficient evidence to indict, the greatest safeguard to the liberty of the accused is the petit jury and the rules governing its determination of a defendant's guilt or innocence. And, if impartiality among the petit jurors is wanting, the cure is reversal by the appellate courts.

The other aspect of defendant's dismissal motion focuses on alleged improper references by the government attorney to organized crime. These references occurred during defendant's grand jury appearance on June 18, 1982. We have thoroughly scrutinized the transcript of defendant's appearance and have found only the following organized crime references in the sixty-two page transcript:

Q Do you know what Mr. [Russell] Bufalino does for a living?

A Today I don't know, but years ago, I think he had dress factories.

Q Are you aware that he has been linked with the Pennsylvania Crime Commission?

A Yes, it has been in the papers.

Q So do you know him to be a person who is perhaps associated with organized crime?

A To my knowledge, I don't know.

Q He has never discussed anything of a criminal nature while he has been in the office, that you have heard?

A No.

Grand Jury Transcript at 12–13.

Q Have you ever heard of the Mafia?

A Yes

Q Have you ever heard of the Cosa Nostra?

A Yes

Q Do you know whether or not that organization actually exists?

A No, sir.

Q You don't know?

A I don't think so.

Q You don't think it exists?

A No. If you are Italian you are a member of the Mafia. That's what everybody tells you.

Q Isn't it a fact Mr. ["Dave"] Osticco uses that office at Medico Industries to conduct organized crime business?

A No, sir.

Q That's not true?

A That is false.

Q You have never heard Mr. Osticco do anything up there that was illegal, talk about anything that was illegal?

A I have never heard him say anything about illegal things going through Medico Industries, never.

Q Have you ever heard Mr. Osticco and Mr. Bufalino discuss anything that might be illegal?

A No, sir.

*Id.* at 57–58.

On the basis of the above brief references to organized crime by the government attorney during defendant's grand jury appearance, defendant seeks to assert a violation of defendant's fifth amendment right to indictment by an unbiased grand jury. As our prior discussion indicates we have found that the pre-indictment publicity did not violate this right[3] and we reach the same conclusion with regard to questioning during his grand jury appearance.

---

**3.** We note that defendant has requested an evidentiary hearing on this issue. However, in view of material defendant has presented in his motion and brief plus the opportunity of his counsel to present appropriate argument during the pretrial/discovery conference on January 28, 1983, we have concluded that a formal evidentiary hearing is unnecessary.

The case of *United States v. Serubo,* 604 F.2d 807 (3d Cir.1979), erodes rather than reinforces defendant's position. In *Serubo,* questions asked of a witness focused on the loansharking activities of an individual whom the government attorney called "probably the number three man of the Philadelphia Cosa Nostra" and quoted a portion of a tape of this individual's voice. The tape, which had been played at the man's trial for loansharking activities, recorded him as saying of a woman who owed him money, that he was going to slice her head in half with a hatchet. This information was interjected into the record *after* the witness had stated he had never heard of the individual to whom the government attorney referred. Moreover, the attorney neglected to indicate his knowledge that the loansharking trial had ended in an acquittal. *Id.* at 814–15. By contrast, before the government attorney in the present proceeding made reference to organized crime, defendant had admitted knowing and working with Osticco for thirty-eight years, Grand Jury Transcript at 10, and knowing Bufalino and frequently seeing him in the office at defendant's place of employment. *Id.* at 11.

Because two grand juries were involved in *Serubo* and the blatant prosecutorial misconduct occurred in front of the first one, the court found that further hearings at the district court level would be necessary to determine whether this misconduct had carried over into the second one, which was the grand jury that returned the indictment. In reaching its conclusions the *Serubo* court concluded that in certain instances dismissal of an indictment may be appropriate, despite the absence of prejudice to defendant, "if there is evidence that the challenged activity was something other than an isolated incident unmotivated by sinister ends, or that the type of misconduct challenged has become 'entrenched and flagrant' in the circuit." *Id.* at 817. *See also United States v. Birdman,* 602 F.2d 547, 559 (3d Cir.1979).

■ In the present matter, defendant seems to overlook once again the fact that he was indicted for perjury and that if any misconduct occurred, it was related to obtaining indictment(s) in jury tampering matters. Therefore we find defendant's position untenable, for he seems to be arguing that the brief references to organized crime in questions addressing his association with certain individuals gave rise to a perjury indictment. Defendant knew he was not a target but that he could be prosecuted for perjury. The cases of *United States v. Bruzgo,* 373 F.2d 383 (3d Cir.1967) and *United States v. Riccobene,* 451 F.2d 586 (3d Cir.1971) are both instructive on the proper disposition of the present motion. In *Bruzgo,* the court rejected a dismissal argument when a grand jury witness was allegedly threatened with a fine and imprisonment and was called a "thief" and a "racketeer." In *Riccobene* dismissal was rejected when the prosecutor told the grand jurors that a key witness would not testify because he would be in danger since the proposed defendants had organized crime connections. In both *Bruzgo* and *Riccobene,* competent evidence supported the indictments and they were upheld. In the present matter, the government sought an indictment based on defendant's denial of having had conversations with Osticco and an individual named Casper "Cappy" Guimento related to jury tampering. The government had evidence that such conversations did take place and the indictment for perjury was not returned until October 19, 1982, four months after the alleged prosecutorial misconduct. Under the circumstances, dismissal of the indictment for pretrial publicity, improper remarks to the grand jury, or both, is unwarranted.

■ For the reasons in our foregoing discussion we find that pre-indictment publicity will not support granting defendant's motion to inspect the grand jury minutes. We turn, therefore, to other aspects of that motion and first address defendant's contention that inspection should be permitted because hearsay evidence was presented to the grand jury.

■ Assuming that such evidence was used, we note that it is permissible for an

indictment to be based on hearsay. *See, e.g., Costello v. United States,* 350 U.S. 359, 363, 76 S.Ct. 406, 409, 100 L.Ed. 397 (1956). A hearsay argument was considered and rejected in *United States v. Ferretti,* 508 F.Supp. 913 (E.D.Pa.1981), wherein the court refused to adhere to the rule formulated by the United States Court of Appeals for the Second Circuit in *United States v. Estepa,* 471 F.2d 1132 (2d Cir.1972). This rule was summarized as follows in *United States v. Cruz,* 478 F.2d 408, 410 (5th Cir.), *cert. denied,* 414 U.S. 910, 94 S.Ct. 259, 38 L.Ed.2d 148 (1973):

> [A]n indictment based on hearsay is invalid where (1) non-hearsay evidence is readily available; (2) the grand jury is misled into believing it was hearing direct testimony rather than hearsay; and there is a high probability that had the grand jury heard the eyewitnesses it would not have indicted.

The *Cruz* court noted that the rule did not state a constitutional requirement but instead set "a supervisory guideline to be employed by courts within their sound discretion to protect potentially innocent citizens from possible prosecutorial manipulation of grand jury proceedings." 478 F.2d at 411. Accordingly, the court looked for some showing of impairment of the integrity of the grand jury proceedings and rejected any blanket application of the rule, even to indictments grounded solely in hearsay.

The court in *Ferretti, supra,* noting that the *Estepa* guidelines were of "doubtful validity" reasoned as follows:

> Notwithstanding the inapplicability of *Estepa,* however, the defendant's contentions would not warrant a dismissal of the indictment. Assuming arguendo that the defendant's contention that non-hearsay evidence was readily available is plausible, essential pleading elements are absent. The defendant has failed to allege that the grand jury was misled or that there is a high probability that if non-hearsay testimony had been utilized the defendant would not have been indicted. Accepting defendant's contention that nonhearsay testimony was available in

this case, without more, does not warrant dismissal of the indictment. *See United States v. Wander,* 601 F.2d 1251, 1260 (3d Cir.1979). There is absolutely no suggestion that the testimony presented to the grand jury was of the "shoddy" nature condemned in *Estepa. See, e.g., United States v. Pray,* 452 F.Supp. 788, 801–02 (M.D.Pa.1978). According, the defendant's Motion To Dismiss The Indictment will also be denied.

508 F.Supp. at 917. In the present case, defendant's motion and brief present something of a "catch-22" situation. Defendant contends that there may be grounds for a motion to dismiss the indictment but that the only way he can tell is to inspect the grand jury minutes. Yet in order to inspect the minutes, defendant must show a particularized need therefor.

Defendant appears to suggest that his "beliefs" about problems with evidence presented to the grand jury is sufficient. To the contrary, were we to follow defendant's rationale, we would ignore both the presumption of regularity which attaches to grand jury proceedings, *see Hamling v. United States,* 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974) and the judicial disposition that the secrecy of these proceedings should not be disturbed absent a showing of impropriety. *See United States v. Tedesco,* 441 F.Supp. 1336 (E.D.Pa.1977). As the court in *Shober, supra,* realized, "A general desire ... to ferret out improprieties and to demonstrate insufficiency of evidence will be present whenever a grand jury indicts .... Whether the government lacks evidence to support the charges contained in the indictment is a matter to be resolved at trial." 489 F.Supp. at 412 [citation omitted]. We agree with the reasoning in *Shober,* that the requirement that the one seeking to pierce the secrecy veil surrounding grand jury proceedings make a sufficient showing of a particularized need, must be strictly enforced in order to avoid routine disclosure of such matters. *Id.* Having found that defendant has not made

such a showing, his motion to inspect the grand jury minutes is denied.[4]

## VI. The Second Motion to Dismiss the Indictment

In addition to the dismissal motion previously discussed, defendant filed a motion to dismiss the indictment for other reasons. First, defendant alleges that the indictment does not meet the standards applicable to perjury indictments. Defendant concedes that he was under oath when he testified on June 18, 1982, before the grand jury, but attacks the indictment as not specifying the portions of defendant's answers believed to

4. Because of our disposition of this motion, the accompanying motion of defendant for an extension of time is denied. That motion requested ten (10) days following inspection of the grand jury minutes in which to file a motion to dismiss the indictment.

5. For example, the fifth paragraph of Count I of the indictment provides as follows:
5. At the time and place aforesaid in paragraph 1 of Count I,
SAMUEL LOVECCHIO,
appearing as a witness under oath before said grand jury, was asked the following questions and gave the following answers, knowing the underscored material declarations to be false:
Q. Have your ever talked about Rose Ann Cortese with Mr. Osticco?
A. No sir.
 * * * * * *
Q. Have you ever heard Mr. Osticco discuss Charles Cortese?
A. No, I haven't.
 * * * * * *
Q. Did Mr. Osticco ever say to you that he wasn't worried about Rose Ann Cortese talking to the authorities, but that he was worried about Charles Cortese talking?
A. I have never heard anything like that.
 * * * * * *
Q. Has Mr. Osticco ever told you he was afraid that Chuckie Cortese's wife might talk, has he ever said anything like that to you?
A. No, I have never talked to him about Mr. Charles Cortese or his wife, never heard him talk about it.
Q. Has Mr. Osticco ever told you or expressed to you that Chuckie, that is, Charles Cortese, himself might talk?
A. No, I never heard him say anything about it. We never discussed it.
Q. You never discussed it?
A. No.
Q. You are absolutely certain you have never discussed this with Mr. Osticco?

be false nor the factual basis for the determination of falsity. In addition, defendant alleges that the indictment fails to indicate what the grand jury believed were the true facts and how the purported falsity of defendant's testimony affected the deliberations of the grand jury. Our review shows that the indictment could hardly have been more specific in indicating to defendant which parts of his testimony were considered false.[5] Moreover, paragraph 6 of each count of the indictment indicates the belief of the grand jury that defendant actually had had the conversations with Osticco and Guimento which he had denied to

A. Never discussed Charles Cortese, no.
 * * * * * *
Q. Have you ever heard Mr. Osticco even mention Mr. Cortese's name?
A. No.
Q. Have you ever heard Mr. Osticco mention the name of the former Rose Ann Cortese?
A. Never heard him talk about her.
 * * * * * *
Indictment at 2–3. The fifth paragraph of Count II is similarly specific.
5. At the time and place aforesaid in paragraph 1 of Count II,
SAMUEL LOVECCHIO,
appearing as a witness under oath before said grand jury, was asked the following questions and gave the following answers, knowing the underscored material declarations to be false:
Q. Did you ever tell Mr. Cappy Guimento, Mr. Casper Guimento, that Mr. Osticco has said to you that he wasn't worried about Rose Ann Cortese talking, but that he was worried about Charles Cortese talking?
A. No, sir, I never heard anything like that.
Q. You never heard of anything like that?
A. I never heard them talk about that.
Q. So Mr. Osticco never told you anything like that?
A. No, sir.
Q. And you never told Mr. Guimento anything like that?
A. No, I never discussed anything with him. Nothing about any of this.
*Id.* at 4–5. Though not required to do so, we have compared these portions of the indictment with the transcript of defendant's testimony before the grand jury on June 18, 1982, and find that paragraph 5 of Count I accurately quotes from pages 22–25 of the transcript and paragraph 5 of Count II accurately quotes from pages 59–60.

the grand jury. Unlike the situation in *United States v. Slawik,* 548 F.2d 75 (3d Cir.1977), the present grand jury questions were not ambiguous, *see id.* at 81–83, nor were they "deliberately artless and vague . . . [so that] it was entirely unreasonable to expect that defendant understood the questions posed to him." *Id.* at 86.

■■■■ *United States v. Tonelli,* 577 F.2d 194 (3d Cir.1978), also relied on by defendant, is likewise unpersuasive because in that case the indictment was grounded in defendant's response to ambiguous questions. As the court noted,

In preparing a true-false test, perceptive teachers, while aware of the possibility of pure chance-guessing, will phrase the false statement to be so close to the truth that students are required to be precise in making their choice. In drafting an indictment for perjury, however, a grand jury must take exactly the opposite tack. No guessing is tolerated and the indictment must set out the allegedly perjurious statements and the objective truth in stark contrast so that the claim of falsity is clear to all who read the charge. . . .

*Id.* at 195. In *Bronston v. United States,* 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973) the Supreme Court stressed the duty of the examiner to frame his questions clearly and "to recognize the evasion and to bring the witness back to the mark." *Id.* 409 U.S. at 358, 93 S.Ct. at 600. In other words, an indictment under 18 U.S.C. § 1621, as in *Bronston,* or under 18 U.S.C. § 1623, as in the present case, cannot be based on questions that are ambiguous or otherwise unclear and the equally uncertain answers thereto. Such an indictment would violate the standard recognized by the court in *United States v. Brumley,* 560 F.2d 1268, 1277 (5th Cir.1977) that "[e]specially in perjury cases, defendants may not be assumed into the penitentiary." As the Court in *Bronston, supra,* stated, "Precise questioning is imperative as a predicate for

the offense of perjury." 409 U.S. at 362, 93 S.Ct. at 602. Having reviewed the government attorney's questions thoroughly in the present matter, we find that they are well within the specificity requirements set by the cases and provide a valid basis for the indictment.

■■■ We turn now to defendant's contention that the indictment must fail because it does not indicate in what manner his alleged mendacity affected the grand jury proceedings. We have examined applicable authorities and find that defendant's reliance on *United States v. Crocker,* 568 F.2d 1049 (3d Cir.1977) is misplaced. In *Crocker* one of the issues before the court was the sufficiency of the materiality allegations contained in an indictment charging that perjurious testimony was given before a grand jury. The statement under attack alleged that defendant, a program director and radio disc jockey, had been paid by a named independent record promotion man to promote the records represented by that man's company. The defendant in *Crocker* had denied receiving payments. The court held that although the statement of materiality "might have been clearer," it sufficed to show that the testimony, if false, would hinder the grand jury's "payola" investigation. *Id.* at 1057. Citing *Slawik,* the court pointed out "that both under the perjury statute, 18 U.S.C. § 1621, and under the false declarations statute, 18 U.S.C. § 1623,[6] materiality is an essential element of the offense and a question of law reserved for decision by the court." 568 F.2d at 1056. Insofar as indications in the present indictment of how the testimony of defendant was material, paragraphs 2, 3, and 4 of both counts set forth that the grand jury was investigating jury tampering in a particular federal criminal trial, that it was material to determine defendant's knowledge of persons that the grand jury might charge and, more specifically, to determine defendant's knowledge of conversations he allegedly had with Osticco and Guimento regarding

---

**6.** The indictments in *Slawik, Tonelli,* and *Crocker,* as in the present case, were returned

pursuant to 18 U.S.C. § 1623.

the jury tampering. Therefore, we find that defendant's materiality attack must fail.

The final contention in defendant's motion is that defendant must be prosecuted under 18 U.S.C. § 1621 rather than 18 U.S.C. § 1623. First, defendant argues that when he was called before the grand jury he was told any prosecution therefrom would be under section 1621. A review of his grand jury testimony indicates that defendant is mistaken. A letter to his attorney was read into the record, which letter stated that "should Mr. Lovecchio not testify fully and truthfully before the Grand Jury, the Department of Justice reserves the right to prosecute him for perjury or giving a false statement." Grand Jury Transcript at 4. Defendant acknowledged that he was familiar with the letter's contents. *Id.* at 5. Nowhere is there a citation to a specific statutory section. There was, however, an indication that any charge would be lodged under section 1623, since defendant was given an opportunity to recant.[7] *Id.* at 61. Moreover, since section 1623 specifically addresses false declarations before a grand jury or court, it is difficult to accord any credence to defendant's contention that he did not expect to be charged under that statute. Furthermore, as the government brief points out the case of *United States v. Kahn,* 472 F.2d 272 (2d Cir.1973) is totally irrelevant since it deals with a prosecution brought under section 1621. For the foregoing reasons, defendant's dismissal motion is denied.

We feel compelled to point out at this juncture that our consideration of this last matter has been an unwarranted expenditure of valuable time. We recognize that counsel for any criminal defendant has an obligation to assert positions that will protect the rights of the accused, but in this instance we believe it should have been known that this allegation was simply un-

true. Although counsel is not permitted to accompany a client into a grand jury room, in the present case the government provided counsel a transcript of defendant's testimony pursuant to our pretrial order of October 26, 1982, and the motion was not filed until November 30, 1982. Even though it is possible counsel did not have the transcript before him when he filed the motion, we note that it was attached to a brief filed by the government on December 21, 1982. Moreover, at our conference on January 28, 1983, defendant's counsel indicated that he intended to pursue all his motions. We believe the more prudent course would have been to advise us that allegations of a government promise to charge under section 1621 rather than section 1623 were erroneous and therefore withdrawn or abandoned.

VII. Conclusion

In accordance with the foregoing discussion an order will be filed denying defendant's motions.

---

**7.** Unlike section 1621, the general perjury statute, section 1623 contains the following provision, which gives perjurers a qualified opportunity to recant:

Where, in the same continuous court or grand jury proceeding in which a declaration is made, the person making the declaration admits such declaration to be false, such admission shall bar prosecution under this section if, at the time the admission is made, the declaration has not substantially affected the proceeding, or it has not become manifest that such falsity has been or will be exposed. 18 U.S.C. § 1623(d).